Willie W. NICKEL, Plaintiff–Appellant,

v.

Robert D. HANNIGAN, Warden, Hutchinson Correctional Facility, and Attorney General of Kansas, Defendants–Appellees.

No. 94–3417.

United States Court of Appeals,
Tenth Circuit.

Sept. 30, 1996.

Barbara K. Huff (David J. Gottlieb with her on the brief), Kansas Defender Project, University of Kansas School of Law, Lawrence, KS, for Plaintiff–Appellant.

Kevin Fletcher, Assistant Attorney General (Carla J. Stovall, Attorney General, Kyle G. Smith and Melanie S. Pfeifer, Assistant Attorneys General with him on the brief), Topeka, KS, for Defendants–Appellees.

Before EBEL, HENRY, and McKAY, Circuit Judges.

HENRY, Circuit Judge.

In this appeal, Willie W. Nickel claims that the district court erred in dismissing his petition for a writ of habeas corpus under 28 U.S.C. § 2254 because his trial counsel, William Mize, provided him with ineffective assistance of counsel under the Sixth Amendment of the United States Constitution. Mr. Nickel claims that Mr. Mize was ineffective because he failed to object both to trial testimony that was purportedly privileged and to the admission of Mr. Nickel's allegedly involuntary statements to the police. We exercise jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.

## I. BACKGROUND

In June 1980, Willie Nickel lived in Salina, Kansas in Joe Wuest's household with several other individuals, who, like Mr. Nickel, were "disadvantaged" in some way. Rec. vol. I, doc. 32, at 2. Mr. Wuest housed and fed these individuals in exchange for their labor in his custodial service. Through this arrangement, he "insured that they were dependent upon him." *Id.*

Early on the morning of June 20, 1980, Mr. Nickel and Mr. Wuest had a fight because Mr. Wuest had caught Mr. Nickel asleep on a job. After the fight, Mr. Nickel, afraid of losing his job, went to Dan Boyer's office to seek his advice. Mr. Boyer was a lawyer who had previously represented Mr. Nickel in various matters. Once inside the office with Mr. Boyer, Mr. Nickel told Mr. Boyer that he was afraid of losing his job and that he had been unable to concentrate since Ms. Wanda Kuhlman, another resident of the Wuest household, had disappeared in April 1980. Mr. Boyer assured Mr. Nickel that he would talk to Mr. Wuest later about Mr. Nickel keeping his job.

Mr. Nickel proceeded to tell Mr. Boyer that he did not think that Ms. Kuhlman would ever be found. He then confessed to Mr. Boyer that he had killed Ms. Kuhlman, the manner in which he had killed her, and where he had buried the body. In response, Mr. Boyer asked Mr. Nickel to go find Mr.

Wuest and to bring him back to Mr. Boyer's office before they had any further discussion. Mr. Nickel did as he was requested. Once the three men were in Mr. Boyer's office, they discussed whether Mr. Nickel had killed Ms. Kuhlman, whether Mr. Wuest knew about the murder, and where the body was located. Mr. Nickel repeated his story about killing Ms. Kuhlman to Mr. Wuest and Mr. Boyer. Mr. Boyer then instructed Mr. Wuest to take Mr. Nickel to dig at the reported location of the body to determine the validity of Mr. Nickel's story. Mr. Boyer told Mr. Nickel that Mr. Nickel would probably go to jail or possibly to a state mental hospital.

After Mr. Nickel and Mr. Wuest left Mr. Boyer's office, Mr. Boyer called the police and reported that Mr. Nickel had possibly committed a homicide. Until Mr. Boyer's phone call, the police were unaware of Ms. Kuhlman's death. Following this report, two detectives came to Mr. Boyer's office, where Mr. Boyer again reported to the police that Mr. Nickel had possibly killed someone. At that time, Mr. Boyer also mentioned the name of Detective Galen Marble to the police because Mr. Nickel "had a relationship" with him. Rec. vol. I, doc. 28, at 38.

Mr. Boyer later called the Wuest residence and directed Mr. Nickel and Mr. Wuest to go to the police station. Mr. Nickel and Mr. Wuest went to the station, where Detective Marble advised Mr. Nickel of his *Miranda* rights and then interviewed him. While this interrogation was happening, the police were digging for Ms. Kuhlman's body at the Wuest residence. After the police found a body, which they believed to be that of Ms. Kuhlman, they told Detective Marble of the discovery, who then told Mr. Nickel. Mr. Nickel then admitted to Detective Marble that he had killed Ms. Kuhlman. After Mr. Nickel's confession, Detective Marble received a message that Mr. Nickel's attorney had called and had requested that the police terminate any interrogation of Mr. Nickel until the attorney was present. At that point, Detective Marble ceased the interrogation.[1]

---

1. There was no finding in the state habeas proceedings regarding the identity of the person who called the police station claiming to be Mr. Nickel's attorney, nor is the record clear on this

Public Defender William Mize was appointed to represent Mr. Nickel. At Mr. Nickel's preliminary hearing, Mr. Boyer testified against Mr. Nickel. Mr. Mize orally objected to Mr. Boyer's testimony on the ground that it violated Mr. Nickel's attorney-client privilege, but the state court overruled this objection.[2] At trial, Mr. Boyer again testified against Mr. Nickel, as did, among others, Detective Marble and Susan Perret, an occupant of the Wuest residence. Ms. Perret testified that before June 20, 1980, Mr. Nickel had confessed to her that he had killed Ms. Kuhlman. See Rec. vol. II, St. Dist. Ct. Transcript, at 187. At no point during Mr. Nickel's trial did Mr. Mize renew his objection to Mr. Boyer's testimony. His stated reason for his failure to object at trial was that he did not think that the issue of a lawyer testifying against his client was "appealable" because "[t]he court had already made its feelings known to [him], and [he] had to do the best [he] could with what testimony [he] had to work with." Rec. vol. I, doc. 28, at 85 (Mr. Mize's testimony at the federal district court's evidentiary hearing on Mr. Nickel's habeas petition). During the state court proceedings, Mr. Mize never moved to suppress, nor challenged in any

way, Mr. Nickel's statements and confession to the police.[3]

The trial jury convicted Mr. Nickel of first-degree murder. He appealed to the Kansas Supreme Court, which affirmed his conviction. In 1990, Mr. Nickel began a habeas proceeding in state court under Kan. Stat. Ann. § 60–1507, claiming that Mr. Mize had provided ineffective assistance of counsel by not allowing him to testify and by refusing to talk with him about his case. See Rec. vol. II, Mot. Under K.S.A. 60–1507, at 55. After Mr. Nickel was provided with post-conviction counsel based on the state district court's determination that he was "mentally incapable of preparing and presenting a meaningful petition" under Kan. Stat. Ann. § 60–1507, see Rec. vol. II, Order Appointing Counsel, at 1, Mr. Nickel filed a second petition under Kan. Stat. Ann. § 60–1507, alleging that Mr. Boyer had provided Mr. Nickel with ineffective assistance of counsel when he reported privileged information to the police. This second petition also alleged that Mr. Mize had provided ineffective assistance of counsel when he failed to object to Mr. Boyer's trial testimony and when he failed to challenge the voluntariness of Mr. Nickel's confession to the police because of Mr. Nickel's history of mental illness. The state district court

factual issue. At the federal district court hearing, when asked whether it was he who called the police station, Mr. Boyer replied, "I may have. I just don't remember." See Rec. vol. I, doc. 28, at 41. There is no evidence in the record indicating that someone other than Mr. Boyer made the call.

Although Public Defender William Mize, who represented Mr. Nickel at trial, was not specifically questioned at the federal district court hearing about the call to the police station, he was asked when he first met with Mr. Nickel. He testified as follows: "I can't tell you if it was the day [of Mr. Nickel's confession to the police]—I assume I didn't meet with him until I was appointed. Normally, the appointment process takes about a day or so, so I would assume the next day. . . ." Id. at 71. The state court appearance docket indicates that the order appointing Mr. Mize to represent Mr. Nickel was filed on October 8, 1980. See Rec. vol. II, Appearance Docket, at 2.

2. The transcript of the preliminary hearing is not in the record, and the government claims that it was "lost during the intervening ten years between the commission of the crime and appellant's first collateral attack." See Aple's Br. at 6.

3. If Mr. Mize had moved to suppress Mr. Nickel's statements to the police on the ground that they were involuntarily made, due process would have required the trial judge to conduct "a fair hearing in which both the underlying factual issues and the voluntariness of [Mr. Nickel's] confession [would have been] actually and reliably determined." See Jackson v. Denno, 378 U.S. 368, 380, 84 S.Ct. 1774, 1782, 12 L.Ed.2d 908 (1964). Although Mr. Mize testified at the federal district court hearing that the state trial court had held a Jackson v. Denno hearing, see Rec. vol. I, doc. 28, at 80, 85, which suggests that he had moved to suppress Mr. Nickel's statements to the police as involuntary, the record does not evidence any motions to suppress Mr. Nickel's statements or any hearings to determine their voluntariness. Further, although the orders of the state trial and appellate courts rejected Mr. Nickel's state habeas claim, which was based on Mr. Mize's failure to move to suppress Mr. Nickel's statements to the police, the orders did not base their rejection of the claim on a finding that in fact Mr. Mize had moved to suppress the statements. See Rec. vol. II, St. Dist. Ct. Order Suppressing Mot., at 3–5; Rec. vol. II, St. Ct.App. Mandate, at 8–11.

dismissed the habeas petition, finding both that the communication between Mr. Boyer and Mr. Nickel to which Mr. Boyer testified at trial was not privileged because Mr. Wuest had been present during the communication and that Mr. Nickel's mental condition had not affected the voluntariness of his confession to the police.

On appeal, the Kansas Court of Appeals concluded that Mr. Mize did not provide ineffective assistance of counsel by failing to object to Mr. Boyer's trial testimony because Mr. Nickel had waived the attorney-client privilege by repeating his confession to Mr. Boyer in the presence of Mr. Wuest. The appellate court further determined that Mr. Mize "could have reasonably concluded from the psychological evaluations in the record that Nickel's mental problems would not affect the admissibility of the confession given to the law enforcement officer." *See* Rec. vol. II, St. Ct.App. Mem. Op., at 10. The court held that even if the confession had been suppressed, the other evidence against Mr. Nickel was sufficient to support the conviction. The Kansas Supreme Court denied Mr. Nickel's petition for review of the Kansas Court of Appeals' decision.

Mr. Nickel subsequently brought this federal habeas action under 28 U.S.C. § 2254. After an evidentiary hearing, the federal district court denied Mr. Nickel's petition for a writ of habeas corpus. The court found that Mr. Boyer's actions did not constitute ineffective assistance of counsel under the Sixth Amendment. At the time of Mr. Nickel's confessions to Mr. Boyer, the court found, no Sixth Amendment right to counsel had attached because adversarial judicial proceedings against Mr. Nickel had not yet begun. The court held that it "need not address the attorney-client privilege because it finds that the Sixth Amendment right to counsel had

not attached and Boyer could not, therefore, render ineffective assistance of counsel." Rec. vol. I, doc. 32, at 8. The court also found that Mr. Mize's failure to renew at trial his objection to the admission of Mr. Boyer's testimony did not amount to constitutionally deficient legal performance under the Sixth Amendment. The court did not expressly address Mr. Nickel's claim that Mr. Mize had provided ineffective assistance of counsel in failing to move to suppress Mr. Nickel's statements to the police on the basis that they were involuntarily made. On December 13, 1994, the district court granted Mr. Nickel's request for a certificate of probable cause under 28 U.S.C. § 2253[4] and for leave to proceed on appeal in forma pauperis, from which this appeal followed.

## II. DISCUSSION

Mr. Nickel claims on appeal that the district court erred in dismissing his petition for a writ of habeas corpus under 28 U.S.C. § 2254 because Mr. Mize provided him with ineffective assistance of counsel under the Sixth Amendment of the United States Constitution. *See Banks v. Reynolds*, 54 F.3d 1508, 1514 (10th Cir.1995) ("A habeas petitioner may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment.").[5] He claims that either of the two following errors committed by Mr. Mize constitutes ineffective assistance: first, the failure to object both to the trial testimony of Mr. Boyer, on the basis that it breached Mr. Nickel's attorney-client privilege, and to the testimony of witnesses who gained their knowledge of incriminating evidence as a result of Mr. Boyer's purported breach of Mr. Nickel's privilege; and second, the failure to object to the admission of Mr. Nickel's

**4.** The Anti-terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996), has since amended 28 U.S.C. § 2253. Section 2253 now requires a state prisoner to obtain a certificate of appealability, rather than a certificate of probable cause, before he may appeal the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Here, because Mr. Nickel's appeal was filed on December 9, 1994, and because the district court granted his request for a certificate of probable cause on December 13, 1994, both dates preced-

ing the amendment of § 2253, the district court properly applied the version of § 2253 then in effect.

**5.** As stated above, Mr. Nickel argued in the district court that Mr. Boyer also provided him with ineffective assistance of counsel in violation of the Sixth Amendment. *See* Rec. vol. I, doc. 32, at 1. On appeal, Mr. Nickel argues only that Mr. Mize provided ineffective assistance of counsel.

statements to the police on the ground that they were involuntarily made. This court reviews de novo the district court's ineffective assistance of counsel analysis, which involves mixed questions of law and of fact. *Banks,* 54 F.3d at 1515.

■ Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a convicted defendant must establish two elements in order to have his conviction reversed based on the ineffective assistance of his counsel. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness ... considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064. We assume without deciding that Mr. Nickel has satisfied the first prong of the *Strickland* analysis. *See id.* at 697, 104 S.Ct. at 2069 (explaining that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" and that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed"); *Clabourne v. Lewis,* 64 F.3d 1373, 1379 (9th Cir.1995) (holding that the petitioner's ineffective assistance of counsel claim failed "for lack of prejudice," without first analyzing whether his attorney's performance was objectively deficient). However, we conclude that Mr. Nickel's Sixth Amendment claim must fail because he has not established the second element under *Strickland,* that his attorney's deficient performance prejudiced his defense. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Therefore, we affirm the district court's denial of his petition for a writ of habeas corpus.

**A.** *Mr. Mize's failure to object to the trial testimony of Mr. Boyer and subsequent witnesses did not prejudice Mr. Nickel's defense.*

■ To establish the second element under *Strickland,* that Mr. Mize's deficient performance prejudiced Mr. Nickel's defense, Mr. Nickel "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

Mr. Nickel claims that his defense was prejudiced by Mr. Mize's failure to object to the trial testimony of Mr. Boyer and of subsequent witnesses on the basis that admission of this testimony violated Mr. Nickel's attorney-client privilege under Kansas law, *see* Kan. Stat. Ann. § 60–426 (defining the attorney-client privilege under Kansas law); *State v. Maxwell,* 10 Kan.App.2d 62, 691 P.2d 1316, 1319 (1984) (paraphrasing the rule in Kan. Stat. Ann. § 60–426). He asserts that had Mr. Mize made this objection, he would not have been convicted of first-degree murder. He argues that at some point in the proceedings, a court would have suppressed both Mr. Boyer's testimony because it breached Mr. Nickel's attorney-client privilege and subsequent witnesses' testimony because it was the result of Mr. Boyer's breach of the attorney-client privilege in reporting Mr. Nickel to the police. Under this scenario, Mr. Nickel contends, the prosecution would have been left with no evidence against him, *see* Aplt's Br. at 36, because "the authorities were not even aware that a crime had been committed until Boyer telephoned," *id.* at 33.

■ Mr. Nickel has not shown that Mr. Mize's failure to object to the trial testimony of Mr. Boyer and subsequent witnesses prejudiced his defense: If Mr. Mize had objected on the basis that the witnesses' testimony had breached Mr. Nickel's attorney-client privilege, and assuming that the trial court had concluded that Mr. Nickel's statements to Mr. Boyer were privileged and that Mr. Nickel had not waived his privilege, the trial court would have suppressed only Mr. Boyer's testimony, leaving sufficient additional evidence to support Mr. Nickel's conviction. The trial court could have found that Mr. Boyer's testimony concerning Mr. Nickel's first confession to Mr. Boyer, made to Mr. Boyer alone on the morning of June 20, 1980, and his testimony about Mr. Nickel's second confession to Mr. Boyer, made to Mr. Boyer

and Mr. Wuest in Mr. Boyer's office later that day, would have breached Mr. Nickel's attorney-client privilege.[6] However, still in evidence would have been Ms. Perret's testimony that Mr. Nickel had confessed to her, *see* Rec. vol. II, St. Dist. Ct. Transcript, at 187, and Detective Marble's testimony that Mr. Nickel had confessed to him, *id.* at 141.

■ Mr. Nickel contends that the trial court would have suppressed Detective Marble's testimony had Mr. Mize objected to it as being in breach of Mr. Nickel's attorney-client privilege because it was "directly traceable to Boyer's violation of attorney-client privilege." Aplt's Br. at 32. However, although Mr. Nickel's confession to Detective Marble could be considered the result of Mr. Boyer's breach of Mr. Nickel's attorney-client privilege in reporting Mr. Nickel to the police, there is no indication that Kansas law requires the exclusion of all evidence derived from a breach of an attorney-client privilege. Further, other courts have refused to apply such a broad evidentiary rule of exclusion to breaches of privilege. *See United States v. Marashi,* 913 F.2d 724, 731 n. 11 (9th Cir. 1990) (stating in dictum "that no court has ever applied [the 'fruits of the poisonous tree'] theory to *any* evidentiary privilege and that we have indicated we would not be the first to do so"); *SEC v. OKC Corp.,* 474 F.Supp. 1031, 1039–40 (N.D.Tex.1979) (rejecting the application of the fruit of the poisonous tree doctrine to evidence obtained from a breach of attorney-client privilege and reasoning that "the marginal effectiveness of denying use to an innocent [state] agency for reports produced not by a state but by a private citizen is not justified"). Noting this authority and the absence of Kansas law on this issue, we decline to apply the "fruit of the poisonous tree" doctrine to the possible breach of attorney-client privilege in this case. Therefore, any breach of Mr. Nickel's attorney-client privilege that Mr. Boyer may

have committed had no effect on the admissibility of Mr. Nickel's confession to the police.

Thus, even if the trial court had suppressed Mr. Boyer's testimony, the testimony of Detective Marble and Ms. Perret would have been properly in evidence. Because Mr. Nickel's confession to Detective Marble is admissible due to the fact that it is not suppressible as "fruit of the poisonous tree" and that, as we will later discuss, *see infra* Part B, it was voluntarily made, and because Ms. Perret's testimony is also admissible, Mr. Nickel cannot establish that there is a reasonable probability that Mr. Mize's failure to object to the admission of Mr. Nickel's confessions to Mr. Boyer and to the police changed the result of his trial. The only certain difference in outcome resulting from Mr. Mize's objection at trial would have been to have preserved the issue for appeal. *See State v. Johnson,* 255 Kan. 252, 874 P.2d 623, 627 (1994) (holding that under Kansas law, the failure to renew an objection to the admission of evidence at trial results in that issue not being preserved for review on appeal); *State v. Synoracki,* 253 Kan. 59, 853 P.2d 24, 31 (1993) (same). Therefore, Mr. Nickel cannot use this failure of Mr. Mize to object to testimony on the basis that it breached Mr. Nickel's attorney-client privilege to establish the prejudice prong of the *Strickland* analysis.

**B. Mr. Mize's failure to object to the admission of Mr. Nickel's statements to the police on the ground that they were involuntary did not prejudice Mr. Nickel's defense.**

Mr. Nickel also asserts that Mr. Mize's failure to challenge the voluntariness of his statements to the police prejudiced his defense. He implies that had Mr. Mize objected to the admission of these statements, they would have been suppressed as involuntary under the Due Process Clause of the Four-

---

6. Mr. Nickel urges us to decide that his statements to Mr. Boyer were privileged under Kan. Stat. Ann. § 60–437 and that Mr. Boyer's testimony breached this privilege. However, we need not decide these issues because we conclude that even assuming that Mr. Boyer's testimony breached Mr. Nickel's attorney-client privilege and, therefore, would have been suppressed

if objected to, the remaining evidence that was not suppressible was sufficient to support Mr. Nickel's conviction. *See* Rec. vol. II, St. Dist. Ct. Transcript, at 141 (Detective Marble's testimony that Mr. Nickel told him that he "'hit [Ms. Kuhlman] in the face with a sledge hammer'"), 187 (Susan Perret's testimony that Mr. Nickel told her that "he had killed Wanda [Kuhlman]").

teenth Amendment because of his history of mental problems and because his statements to the police were "a direct product of betrayal by his attorney Boyer," *see* Aplt's Br. at 37.

Under the Due Process Clause of the Fourteenth Amendment, a confession to police is admissible if it " 'is made freely, voluntarily and without compulsion or inducement of any sort.' " *Haynes v. Washington,* 373 U.S. 503, 513, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513 (1963) (quoting *Wilson v. United States,* 162 U.S. 613, 623, 16 S.Ct. 895, 899, 40 L.Ed. 1090 (1896)); *see also Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963) ("If an individual's 'will was overborne' or if his confession was not 'the product of a rational intellect and a free will,' his confession is inadmissible because coerced." (footnotes and citations omitted)). Thus, to conclude that a confession is involuntary under the Due Process Clause of the Fourteenth Amendment, we must find that it was the result of "coercive police activity." *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986).

■ Although the confessant's "mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Id.* at 165, 107 S.Ct. at 520–21; *see also Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961) (listing the confessor's "mental state" as a "relevant" factor in the due process voluntariness inquiry); *Fikes v. Alabama,* 352 U.S. 191, 198, 77 S.Ct. 281, 285, 1 L.Ed.2d 246 (1957) (holding that "the circumstances of pressure applied against the power of resistance of this petitioner, who cannot be deemed other than weak of will or mind, deprived him of due process of law"); *Purvis v. Dugger,* 932 F.2d 1413, 1422 (11th Cir.1991) (holding that the petitioner's confession was voluntary where the petitioner had a history of schizophrenia, was susceptible to authority figures, and had a childlike mentality, but where there was no evidence of police coercion), *cert. denied,* 503 U.S. 940, 112 S.Ct. 1485, 117 L.Ed.2d 627 (1992); *United States v. Macklin,* 900 F.2d 948, 950, 951 (6th Cir.) (holding that the

defendants' confessions were voluntary where one defendant was "mildly mentally retarded" and the other was "borderline mentally retarded," but where there was no evidence of police coercion), *cert. denied,* 498 U.S. 840, 111 S.Ct. 116, 112 L.Ed.2d 86 (1990). If "mental impairment ... should have reasonably been apparent to ... interrogators," then "a lesser quantum of coercion [will] render the confession involuntary." *United States v. Sablotny,* 21 F.3d 747, 752 (7th Cir.1994); *see also Williams v. Collins,* 16 F.3d 626, 638 (5th Cir.) (noting as relevant to the petitioner's claim that his confession to police was involuntary, due to police coercion and to his "diminished capacity," that neither the police officers, who were experienced in detecting drug or alcohol usage, nor the petitioner's father, "testified that [the petitioner] appeared to be impaired in any way"), *cert. denied,* —— U.S. ——, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994). However, even in such cases, for a confession to be involuntary, "the police must somehow overreach by exploiting a weakness or condition known to exist." *United States v. Robertson,* 19 F.3d 1318, 1321 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994); *see also United States v. Guerro,* 983 F.2d 1001, 1004 (10th Cir.1993) (same); *Thompson v. Cox,* 352 F.2d 488, 489 (10th Cir.1965) (holding that the petitioner's confession to police was voluntary where there was no evidence that any information gained by police from the lie detector test or the interrogation of the petitioner while he was on medication "was used as a tool to influence [the petitioner's] final decision to tell of his participation in the crime"); *Miller v. Dugger,* 838 F.2d 1530, 1537 (11th Cir.) ("[E]ven the interrogators' knowledge that a suspect may have mental problems does not make the suspect's statement involuntary unless '[t]he police exploited this weakness *with coercive tactics.'* " (quoting *Connelly,* 479 U.S. at 165, 107 S.Ct. at 520)), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988). In conducting this due process inquiry, we examine the totality of the circumstances. *Haynes,* 373 U.S. at 513, 83 S.Ct. at 1342; *Culombe,* 367 U.S. at 606, 81 S.Ct. at 1881.

Here there is no evidence of, nor does Mr. Nickel even expressly allege the existence of, police coercion, as *Connelly* requires. *See* Aplt's Br. at 37. He merely asserts that due to his history of mental illness, his statements to the police were involuntary. As *Connelly* makes clear, Mr. Nickel's mental condition, in the absence of any evidence of police coercion, does not alone make his statements to the police involuntary. *See, e.g., Connelly,* 479 U.S. at 164–65, 107 S.Ct. at 520–21. Thus, Mr. Nickel has failed to show that his statements to police were involuntary and that there is a reasonable probability that they therefore would have been suppressed if Mr. Mize had objected to them. *See Clabourne,* 64 F.3d at 1378 (affirming the denial of the appellant's petition for a writ of habeas corpus, which was based on a claim that his attorney provided ineffective assistance of counsel under the Sixth Amendment by failing to introduce evidence that the appellant's confession was involuntary, because there was no evidence of police coercion); *Jones v. Delo,* 56 F.3d 878, 887–88 (8th Cir.1995) (affirming the denial of the appellant's petition for a writ of habeas corpus, which was based on a claim that his attorney had provided ineffective assistance of counsel under the Sixth Amendment by failing to produce evidence at trial of the appellant's inability to validly waive his *Miranda* rights, because no such evidence was available to his counsel, and there was no evidence of police coercion), *cert. denied,* —— U.S. ——, 116 S.Ct. 1330, 134 L.Ed.2d 481 (1996); *LaRette v. Delo,* 44 F.3d 681, 688–89 (8th Cir.) (rejecting the defendant's claim that his statements to police were involuntary where the defendant failed to allege that there was any coercive police activity), *cert. denied,* —— U.S. ——, 116 S.Ct. 246, 133 L.Ed.2d 172 (1995).

Even if we construed Mr. Nickel's claim that his statements to the police were "a direct product of betrayal by his attorney Boyer," *see* Aplt's Br. at 37, as an implied claim of police coercion, such a claim would fail. Mr. Boyer's activities in sending Mr. Nickel to the police station and informing the police of Mr. Nickel's possible involvement in the murder of Ms. Kuhlman do not constitute police coercion because Mr. Boyer is not a member of the police, nor was he acting at the direction or on behalf of the police. *See Darghty v. State,* 530 So.2d 27, 31 (Miss.1988) ("Conduct by third parties not connected with the law enforcement officers in the investigation will not vitiate a confession which might be rendered incompetent and inadmissible if such conduct had been committed by a law enforcement officer.").

We thus conclude that Mr. Nickel has not shown that there is a reasonable probability that, had Mr. Mize moved to suppress his statements to the police, Mr. Nickel would not have been convicted of murder. Instead, if Mr. Mize had presented evidence of Mr. Nickel's mental condition at the time of his interview with the police, the evidence would have gone to the weight and reliability, rather than to the admissibility, of Mr. Nickel's statements. *Cf. Robertson,* 19 F.3d at 1322. Further, even if Mr. Mize had moved to suppress Mr. Nickel's statements to the police, and the trial court had granted this motion, the independent evidence of Ms. Perret's testimony that Mr. Nickel confessed to her would have been sufficient to support Mr. Nickel's conviction. Thus, Mr. Nickel has not shown that Mr. Mize's failure to move to suppress Mr. Nickel's confession to the police satisfies *Strickland's* second element of prejudice to the defense.

## III. CONCLUSION

Because we conclude that Mr. Mize provided Mr. Nickel with effective assistance of counsel under the Sixth Amendment of the United States Constitution, we AFFIRM the district court's dismissal of Mr. Nickel's petition for a writ of habeas corpus under 28 U.S.C. § 2254.