**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 5, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSE PENA,

    Defendant - Appellant.

No. 23-2047

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:20-CR-01903-MV-1)**
_____

Kurt J. Mayer, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant Jose Pena.

Jaymie L. Roybal, Assistant United States Attorney, Albuquerque, New Mexico (Alexander M. M. Uballez, United States Attorney, and C. Paige Messec, Assistant United States Attorney, Albuquerque, New Mexico, with her on the brief), for Plaintiff-Appellee United States of America.

_____

Before **McHUGH**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

The Fifth Amendment prohibits the government from using an involuntary confession as evidence in a criminal trial. But law enforcement does not produce an involuntary confession by persuading a suspect to confess or by influencing a

defendant in making inculpatory statements. Rather, a suspect's confession offends the Fifth Amendment only if law enforcement overbears the suspect's free will and critically impairs the suspect's capacity for self-determination.

Here, Defendant confessed that he induced his minor daughter into having— and recording—sexual intercourse with him. Before trial, Defendant moved to suppress his confession as involuntary, but the district court denied his motion, and the jury convicted him. Defendant challenges the district court's denial of his motion, but we hold the district court erred neither in its factfinding nor its legal conclusions. And even if the district court had erred, the error was harmless considering the overwhelming evidence against Defendant. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

Using a Facebook account under the alias "Jaime Peres," Defendant Jose Pena initiated an online, romantic relationship with his then-fifteen-year-old daughter, Jane Doe. Though they never met or talked on the phone, "Jaime" and Jane communicated frequently over Facebook Messenger, regularly professing their love for each other. After almost a year of amorous conversation, "Jaime" switched his tack, telling Jane that he was a cartel member, and that the cartel would kidnap and behead Defendant—her father—unless Jane filmed herself having sex with Defendant.

To add credibility to the threat, Defendant executed two more elements of his scheme. First, "Jaime" told Jane that he knew Defendant was at Walmart—a fact

2

Jane was able to confirm. Second, Defendant told Jane that men in black SUVs with machine guns ambushed Defendant at a gas station and beat him up.

Jane succumbed to "Jaime's" demand and recorded herself having sexual intercourse with Defendant. She sent the videos to "Jaime" through Facebook Messenger. But "Jaime" complained that Jane had not kept her word because it didn't "look like [Jane was] enjoying" the intercourse. So "Jaime" told Jane to record more videos of herself having sexual intercourse with Defendant—but to enjoy it this time. When Jane protested, "Jaime" told Jane the cartel had seized Defendant and had hurt him. So Jane again succumbed to "Jaime's" demand: she recorded herself having sexual intercourse with Defendant and sent the videos to "Jaime" through Facebook Messenger.

The next day, Jane reported the incidents to her school resource officer, who contacted law enforcement. Defendant submitted to a mirandized interview with law enforcement. During his interview, Defendant confessed that he was "Jaime Peres," that he sent Jane the threats as "Jaime," and that he had sexual intercourse with his daughter.

Defendant moved to suppress his confessions as involuntary, arguing that law enforcement compelled an involuntary confession. The district court denied the motion and found Defendant's statements voluntary under the totality of the circumstances. A federal jury convicted Defendant of one count of inducing his minor daughter to engage in sexual activity in violation of 18 U.S.C. § 2422(b), and two counts of inducing his minor daughter to engage in sexually explicit conduct to

3

produce a visual depiction in violation of 18 U.S.C. § 2251(a).  Defendant appeals

the district court's denial of his motion to suppress.

## II.

In reviewing a district court's denial of a motion to suppress, we view all facts

in the light most favorable to the government and accept the district court's

factfinding unless clearly erroneous.  United States v. Canada, 76 F.4th 1304, 1307

(10th Cir. 2023) (quoting United States v. Windom, 863 F.3d 1322, 1326 (10th Cir.

2017)).  "A finding of fact is clearly erroneous if it is without factual support in the

record or if, after reviewing all of the evidence, we are left with the definite and firm

conviction that a mistake has been made."  Id. (quoting United States v. Hernandez,

847 F.3d 1257, 1263 (10th Cir. 2017)).

Defendant argues the district court based its denial on several erroneous

findings of fact.  First, Defendant argues the district court erred in concluding that

Defendant became "increasingly forthcoming" as the interrogation progressed.  But

Defendant misconstrues the district court's opinion: the district court did not find that

the interview was "progressing," nor that Defendant was becoming "increasingly

forthcoming."  The district court found only that law enforcement testified "he felt

the interrogation was progressing" and "he felt that [Defendant] was becoming

increasingly forthcoming."  United States v. Pena, No. 20-CR-01903, 2022 WL

1143002, at *6–7 (D.N.M. Apr. 18, 2022).  Defendant does not argue that law

enforcement did not testify accordingly—only that other evidence suggests

Defendant was not in fact becoming increasingly forthcoming as the interrogation

progressed.  Because Defendant challenges a finding the district court did not make,

we cannot conclude the district court made a clearly erroneous finding of fact.

Next, Defendant argues the district court erred by finding law enforcement

"ultimately clarified that [Defendant] was under investigation" after "initially l[ying]

about the nature of the investigation."  See id. at *6.  Early in the interrogation, law

enforcement told Defendant they were "not accusing [Defendant] of anything right

now."  Id. at *4.  The district court plainly denounced this statement as "troubling"

and "decepti[ve]."   Id. at *6.  But the district court also found law enforcement

counteracted their deception by clarifying—twice—that law enforcement was

questioning Defendant as a suspect of a crime, long before Defendant confessed.  Id.

Defendant argues that he did not understand that he was a suspect at the time of his

confession.  But as the district court noted, Defendant acknowledged—long before

confessing—that law enforcement was questioning him "because supposedly [Jane]

reported that we had sexual relations."  Id.  Because the record supports the district

court's finding, the district court did not clearly err.  See Canada, 76 F.4th at 1307.

Defendant also argues the district court erred by finding law enforcement "did

not misrepresent the law or make any promise of leniency." [1]  Pena, 2022 WL

---

[1] The Government argues Defendant waived these issues because he never
argued to the district court that his confession should be suppressed because of
misrepresentations of law or leniency.  A party waives an issue for appellate review
when he intentionally relinquishes or abandons a known right.  United States v.
Olano, 507 U.S. 725, 733 (1993) (citation omitted).  But Defendant's arguments
about misrepresentation concern the sufficiency of the district court's factfinding.
Because Defendant could not have challenged the district court's factfinding until

1143002, at *6 (citing United States v. Young, 964 F.3d 938, 944 (10th Cir. 2020); United States v. Lopez, 437 F.3d 1059, 1065 (10th Cir. 2006)). Specifically, Defendant argues law enforcement "implied," "intimat[ed]," and "[s]uggest[ed]" that Defendant could receive a more lenient sentence if he confessed by telling Defendant stories of other defendants who confessed and received milder sentences. But our precedent distinguishes implications from promises of leniency, and we have already held that law enforcement does not make an impermissible promise of leniency by telling a suspect about "past criminals" who received more lenient sentences for cooperating. United States v. Morris, 247 F.3d 1080, 1089–90 (10th Cir. 2001); see also Lopez, 437 F.3d at 1064 (citing Morris, 247 F.3d at 1080). Because Defendant does not—and cannot reasonably—argue that law enforcement actually promised Defendant leniency, we hold that the district court did not clearly err in finding law enforcement made no "promise of leniency." See Pena, 2022 WL 1143002, at *6.

Similarly, Defendant argues law enforcement misrepresented the law by telling Defendant, after he confessed, that he should also admit to fabricating Jaime Peres's cartel threats because "nothing worse is going to happen to you now." Defendant argues law enforcement's assertion was a misrepresentation because Defendant's "case was moved to federal court where he faced a life sentence." But Defendant does not explain how Defendant's additional confession contributed to his case being filed in federal court, nor does an explanation present itself in the record. Without an

---

after the district court made the finding, Defendant did not waive the purported factfinding error by failing to raise it prior to the district court's ruling. See id.

6

explanation of why law enforcement's statement was untrue or misleading, we cannot conclude the district court clearly erred by finding law enforcement "did not misrepresent the law." See id.

Last, Defendant argues the district court erred by finding Defendant's ex-wife—Jane's mother—Maria Ramirez ceased operating "at the direction or on behalf of the police" as she continued speaking with Defendant. See id. at *9 (quoting Nickel v. Hannigan, 97 F.3d 403, 411 (10th Cir. 1996)). As support, Defendant points out that Ramirez was present for the interrogation only because law enforcement wanted a "loved one" present, also highlighting that law enforcement directed her to leave once Defendant confessed. True, these factors may suggest Ramirez operated as an agent of the police—and the district court accordingly found Ramirez initially acted as an agent of the police. Id. (citing Nickel, 97 F.3d at 411). But the district court *also* considered evidence demonstrating Ramirez withdrew herself as a police actor—namely, Ramirez's statements demonstrating she was speaking to Defendant out of concern for Jane and out of hope Defendant would exonerate himself. Id. It is the province of the district court to draw reasonable inferences from diverging evidence. United States v. Kimoana, 383 F.3d 1215, 1220 (10th Cir. 2004) (citing United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999); United States v. Broomfield, 201 F.3d 1270, 1273 (10th Cir. 2000)). Because the district court's finding that Ramirez ceased operating "at the direction or on behalf of the police" finds support in the record, we hold the district court did not clearly err. See Canada, 76 F.4th at 1307.

In sum, Defendant has not demonstrated that the district court clearly erred in its factfinding. So we evaluate the district court's legal conclusions based on the facts found by the district court.

III.

The government's use of an involuntary confession as evidence in a criminal trial violates a defendant's Fifth Amendment right against self-incrimination. Dickerson v. United States, 530 U.S 428, 433 (2000) (citing Bram v. United States, 168 U.S. 532, 542 (1897); Brown v. Mississippi, 297 U.S. 278 (1936)). We review the voluntariness of a confession de novo. Young, 964 F.3d at 943 (citing Lopez, 437 F.3d at 1062). In doing so, we consider the totality of the circumstances, and no single component is determinative. Lopez, 437 F.3d at 1063 (first quoting United States v. Toles, 297 F.3d 959, 965–66 (10th Cir. 2002); and then quoting United States v. Lugo, 170 F.3d 996, 1004 (10th Cir. 1999)). The Government bears the burden of demonstrating a confession is voluntary by a preponderance of the evidence. Id. (citing Missouri v. Seibert, 542 U.S. 600, 608 n.1 (2004)).

Although we evaluate voluntariness by the totality of the circumstances, our precedent recognizes that the following often inform our judgment: (1) the Defendant's age, intelligence, and education; (2) the detention's length; (3) the questioning's length and nature; (4) whether law enforcement advised Defendant of his constitutional rights; and (5) whether law enforcement subjected Defendant to physical punishment. Id. at 1063–64 (quoting Toles, 297 F.3d at 965–66) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). Although the district court

8

found that none of these factors suggested Defendant involuntarily confessed, Pena, 2022 WL 1143002, at *3, *7, *9, *11, Defendant challenges only the district court's conclusions about the length and nature of his questioning.

Defendant argues that law enforcement compelled his confession by coercive conduct, including speaking in loud voices, questioning Defendant for almost four hours, implying that Defendant's children might commit suicide because of Defendant's actions, informing Defendant that his children had talked about committing suicide, invading Defendant's personal space, utilizing three officers in questioning Defendant, inviting Defendant's ex-wife to speak with Defendant, exhorting Defendant to confess almost 100 times with phrases like "be honest" and "tell the truth," deceiving Defendant by telling him he was not a suspect and that law enforcement had "overwhelming evidence" against him, threatening jail time, implying Defendant could earn leniency by confessing, telling Defendant his daughter couldn't forgive him unless he confessed, and implying they would continue questioning Defendant until he confessed. Id. at *2–8.

In considering the totality of the circumstances, we agree with the district court: law enforcement's conduct was, at times, "uncivil" and "troubling." Id. at *6–7. But the constitutional inquiry is not whether law enforcement's conduct deserves execration. See Malloy v. Hogan, 378 U.S. 1, 7 (1964). The Fifth Amendment does not forbid law enforcement from persuading a defendant to confess, nor does it prohibit law enforcement from crafting an environment where the defendant "is more likely to tell the truth." United States v. Washington, 431 U.S.

9

181, 187–88 (1977). Indeed, custodial interrogations are inherently coercive. <u>Moran v. Burbine</u>, 475 U.S. 412, 426 (1986) (citing <u>New York v. Quarles</u>, 467 U.S. 649, 656 (1984)). Rather, we will hold a confession involuntary only if law enforcement overbore the defendant's free will and critically impaired the defendant's "capacity for self-determination." <u>United States v. Perdue</u>, 8 F.3d 1455, 1466 (10th Cir. 1993) (quoting <u>Culombe v. Connecticut</u>, 367 U.S. 568, 602 (1961)).

Considering the totality of the circumstances, we conclude the Government has demonstrated by a preponderance of the evidence that Defendant's confession was the result of an "essentially free and unconstrained choice." <u>Id.</u> (quoting <u>Culombe</u>, 367 U.S. at 602). Seven considerations inform our decision. First, as the district court found, Defendant was "not particularly susceptible to coercion." <u>Pena</u>, 2022 WL 1143002, at *11. Defendant has not challenged this finding, and the record provides no reason to doubt that Defendant "appeared to understand [law enforcement] at all times, and . . . had no communication problems." <u>See</u> <u>United States v. Lamy</u>, 521 F.3d 1257, 1260 (2008).

Second, law enforcement advised Defendant of his right to remain silent. Although the administration of <u>Miranda</u> warnings is not necessarily sufficient to determine voluntariness, "cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of <u>Miranda</u> are rare." <u>Berkemer v. McCarty</u>, 468 U.S. 420, 433 n.20 (1984) (citing <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966)). Here, law enforcement *thrice* informed Defendant that he could refuse

10

to answer questions, (1) mirandizing Defendant, (2) reminding Defendant he could decline to answer any of law enforcement's questions during the interrogation, and (3) telling Defendant that if he decided he "d[id]n't want to talk anymore," he could "stop talking and tell [law enforcement]." Pena, 2022 WL 1143002, at *3. These warnings demonstrate that although their tactics encouraged confession, law enforcement enabled—rather than overbore—Defendant's free will.[2]

Third, the duration of Defendant's interrogation (three hours, forty-eight minutes, and eight seconds) suggests Defendant confessed voluntarily. Id. at *9. This duration is not inherently troubling for Fifth Amendment purposes. For example, in Germany v. Hudspeth, we held that an interrogation lasting three and one-half hours was not the "long and uninterrupted questioning" that would overbear a defendant's volition. 209 F.2d 15, 19 (10th Cir. 1954); see also Berghuis v. Thompkins, 560 U.S. 370, 387 (2010) (citing Colorado v. Connelly, 479 U.S. 157, 163–64 n.1 (1986)) ("[T]here is no authority for the proposition that an interrogation of [three hours] is inherently coercive."); Ashdown v. Utah, 357 U.S. 426, 428, 431 (1958) (holding a confession voluntary despite a five-and-a-half hour interrogation); but see Davis v. North Carolina, 384 U.S. 737, 739 (1966) (holding a confession involuntary where the defendant was interrogated repeatedly over a period of sixteen

---

[2] Defendant argues that law enforcement coerced his confession by "suggest[ing] his interrogation would not end until [law enforcement] heard the answers [they] wanted." But, in considering the totality of the circumstances, law enforcement's reminders that Defendant could stop the interview at any point demonstrates that law enforcement's "suggest[ions]" could not have had any significant coercive effect—much less one that overbore Defendant's free will.

days); Ashcraft v. Tennessee, 322 U.S. 143, 149–151, 153–54 (1944) (holding a confession involuntary where the defendant was interrogated for thirty-six hours without sleep).

Fourth, in the context of all relevant circumstances, the nature of Defendant's interrogation does not offend the Fifth Amendment's guarantees. Defendant has offered no basis suggesting he suffered any sort of sleep deprivation. Cf. Greenwald v. Wisconsin, 390 U.S. 519, 520 (1968); Ashcraft, 322 U.S. at 153. During the interrogation, law enforcement provided Defendant breaks in questioning, offering soda, water, and the opportunity to use the bathroom. Pena, 2022 WL 1143002, at *10. And although law enforcement—at times—spoke loudly and gestured into Defendant's personal space, id. at *2, the record does not suggest that these physical threats or intrusions critically impaired Defendant's capacity for self-determination. Cf. Beecher v. Alabama, 389 U.S. 35, 36 (1967) (the defendant confessed after police chief "pressed a loaded gun to [the defendant's] face" and told the defendant he would kill him if he didn't "tell the truth," and "another officer pointed a rifle against the side of his head," firing it "next to [his] ear"); Payne v. Arkansas, 356 U.S. 560, 564–65 (1958) (the defendant confessed after Chief of Police told the defendant he would admit a mob into the jail if he didn't "tell him the truth").

Fifth, we are not persuaded that law enforcement's repeated exhortation for honesty reasonably contributed to overbearing Defendant's free will. The practice of encouraging a suspect to be honest is well-established in the circuits as noncoercive conduct. E.g., United States v. Chalan, 812 F.2d 1302, 1305, 1308 (10th Cir. 1987)

12

(determining the defendant voluntarily confessed despite "[t]he investigators, the Governor, and [the defendant]'s mother exhort[ing] him to tell the truth"); United States v. Wolf, 813 F.2d 970, 972, 975 (9th Cir. 1987) (determining defendant voluntarily confessed despite law enforcement "demand[ing] that [defendant] tell [law enforcement] the truth"); Jenner v. Smith, 982 F.2d 329, 334 (8th Cir. 1993) (determining the defendant voluntarily confessed despite law enforcement accusing the defendant of lying). In the context of these precedents, Defendant has not sufficiently explained how repeated requests for honesty impaired his free will. And without such an explanation, we reject his contention that the Fifth Amendment forbids law enforcement to implore a person to tell the truth.

Sixth, the Government has demonstrated that law enforcement's deceptions did not compel Defendant's confession. The district court found law enforcement deceived Defendant by (1) overstating the strength of its evidence and (2) denying that Defendant was a suspect. Pena, 2022 WL 1143002, at *5. But deceit does not inherently render a confession involuntary. United States v. Woody, 45 F.4th 1166, 1176 (10th Cir. 2022) (quoting United States v. Harrison, 639 F.3d 1273, 1278, 1280 (10th Cir. 2011)). Instead, we consider whether the purportedly coercive activity caused the "resulting confession." See Connelly, 479 U.S. at 165.

Under Supreme Court and Tenth Circuit precedent, deceit about the strength of evidence against a defendant does not alone "render an otherwise voluntary confession involuntary." Lucero v. Kerby, 133 F.3d 1299, 1311 (10th Cir. 1998) (citing Frazier v. Cupp, 394 U.S. 731, 739 (1969); Ledbetter v. Edwards, 35 F.3d

13

1062, 1070 (6th Cir. 1994)). And here, law enforcement's deceit about Defendant's suspect-hood could not have contributed to Defendant's confession. Law enforcement told Defendant he was being questioned as a suspect long before Defendant confessed, and Defendant himself acknowledged, early in the session, that he was being questioned because his daughter had accused him of having sexual intercourse with her. Pena, 2022 WL 1143002, at *6. In short, law enforcement's deceptive statement about Defendant's suspect-hood could not have caused Defendant's confession because Defendant understood—and admitted—he was a suspect prior to confessing. So we are persuaded that law enforcement's deceptions did not override Defendant's free will.

Finally, we conclude that law enforcement did not significantly impair Defendant's capacity for self-determination by involving Defendant's ex-wife, Ramirez, in the interrogation. Defendant argues that law enforcement acted coercively by inviting Ramirez to speak with Defendant. Certainly familial involvement in an interrogation might persuade a suspect to confess. But Ramirez's encouragement simply did not prevent Defendant from making decisions for himself—the inquiry of the Fifth Amendment. See Perdue, 8 F.3d at 1466 (quoting Culombe, 367 U.S. at 602).

In sum, law enforcement used various tactics to encourage and influence Defendant's confession. But the Fifth Amendment does not prohibit tactics, encouragement, or influence. See Washington, 431 U.S. at 187. The Fifth Amendment concerns itself only with confessions produced by overbearing a

14

Defendant's will or critically impairing a defendant's capacity for self-determination. See Perdue, 8 F.3d at 1466 (quoting Culombe, 367 U.S. at 602). Considering the totality of the circumstances, the Government has demonstrated by a preponderance of the evidence that Defendant confessed of his own free will.

## IV.

Even if law enforcement had compelled Defendant's confession, we would affirm because the alleged error was harmless beyond a reasonable doubt.

Federal Rule of Criminal Procedure 52(a) requires us to disregard harmless errors. The Supreme Court has not always been consistent in applying the harmless error standard to the admission of an involuntary confession. The Supreme Court initially held that if a party introduced an involuntary confession at trial, a reviewing court should set aside the judgment even if the evidence apart from the confession could sustain the jury's verdict. Semble Malinski v. New York, 324 U.S. 401, 404 (1945) (citing Lyons v. Oklahoma, 322 U.S. 596, 597 (1944)). But in Arizona v. Fulminante, 499 U.S. 279, 295 (1991), the Supreme Court instituted the modern rule: "harmless-error analysis applies to coerced confessions."[3]

Consistent with this standard, Defendant concedes that we should hold the purported error harmless under Rule 52(a) if "the properly admitted evidence of guilt

---

[3] Although "most constitutional errors can be harmless," some errors are structural and subject to automatic reversal. Neder v. United States, 527 U.S. 1, 8 (1999) (first quoting Fulminante, 499 U.S. at 306; and then quoting Johnson v. United States, 520 U.S. 461, 468 (1997)). But in light of Fulminante, Defendant does not argue that an involuntary confession gives rise to structural error.

15

is so overwhelming, and the prejudicial effect of [the confession] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the [confession] was harmless." United States v. Glass, 128 F.3d 1398, 1403 (10th Cir. 1997) (quoting Schneble v. Florida, 405 U.S. 427, 430 (1972)).  In the context of a trial, an error is harmless if it did not affect the outcome of the trial or leave us with grave doubt about whether it did so.  United States v. Collins, 575 F.3d 1069, 1073 (10th Cir. 2009) (quoting United States v. Jones, 44 F.3d 860, 873 (10th Cir. 1995)).

The evidence of Defendant's guilt is so overwhelming that it is "clear beyond a reasonable doubt that a rational jury would have found [Defendant] guilty"—with or without Defendant's confession.  See Neder, 527 U.S. at 18.

*DNA evidence*:  The jury reviewed DNA evidence demonstrating that Defendant had sexual contact with Jane.  After Jane reported the incident to her school, Jane submitted to an examination by a Sexual Assault Nurse Examiner ("SANE").  This examination revealed Defendant's semen on the inside crotch of Jane's underwear and male DNA deep inside Jane's vagina.

*Video evidence*:  The jury reviewed eight videos of a man having vaginal, digital, and oral sex with a female.  Each video was recovered from one of Jane's electronic devices.  Each video was filmed in Defendant's trailer home, and Defendant stipulated that he was the man in the videos.  Although they do not display the female's face, the videos show the female holding Jane's distinctive phone and

show the female with painted fingernails matching Jane's when she reported the incident to her school resource officer.[4]

*Digital forensic evidence*:  The jury reviewed forensic evidence demonstrating that "Jaime Peres" was Defendant.  According to Facebook records, "Jaime Peres" created his Facebook account on June 26, 2015, and registered the account to JaimePerea597@yahoo.com.  But fifteen minutes *before* the Jaime Peres Facebook account's creation, Defendant received a text message that included the email JaimePerea597@yahoo.com and a Yahoo! verification code, consistent with the creation of a new email address.  Further, the Facebook records establish that the same device regularly logged into both Defendant's Facebook account and the Jaime Peres Facebook account in quick succession.  Last, because "Jaime" demanded that Jane have sex with Defendant, "Jaime's" messages themselves demonstrate Defendant controlled the Jaime Peres Facebook account.

*Jane's testimony*:  When Jane took the stand, the government asked whether Jane engaged in sexual acts with Defendant because of "Jaime's" threats, and Jane answered: "I believe so."  This testimony was consistent with Jane's statements to her SANE after the incident: that she had sex with a "family member" to protect her family from the cartel.

In light of this evidence, a rational jury would have convicted Defendant with or without Defendant's confession, and so we are confident Defendant's confession

---

[4] The Government showed the jury Jane's phone: a white LG phone in a black case with a "Cookie Monster" sticker on it.

17

did not affect the outcome of the trial.[5]  See Collins, 575 F.3d at 1073 (quoting Jones, 44 F.3d at 873).  Thus, even if the district court erred in denying Defendant's motion to suppress his confession, we hold the error harmless under Rule 52(a).[6]

AFFIRMED.

---

[5] For this reason we deny the Government's Motion to Supplement the Record. "Federal Rule of Appellate Procedure 10(e) authorizes the modification of the record only to the extent it is necessary to 'truly disclose[] what occurred in the district court.'"  United States v. Kennedy, 225 F.3d 1187, 1191 (10th Cir. 2000) (quoting Fed. R. App. P. 10(e)).  The Government's proposed record supplement is not necessary because the unmodified record persuades us a rational jury would have convicted Defendant with or without Defendant's confession.

[6] This court's order dated February 8, 2024, supplemented the record on appeal with documents 54 and 98 from the district court docket but provisionally sealed the volume.  We recognize a presumption in favor of public access to judicial records. See Eugene S. v. Horizon Blue Cross Blue Shield, 663 F.3d 1124, 1135 (10th Cir. 2011) (citing Mann v. Boatright, 477 F.3d 1140, 1149 (10th Cir. 2007)).  Because Defendant admits "it probably is no longer necessary" to seal these documents, Defendant has not overcome this presumption, and we unseal the supplemental volume.