EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
MAURICIO DECÓS CÁCERES, acusado y apelante.

Núm. 9917.—*Sometido:* Mayo 20, 1943. *Resuelto:* Junio 1, 1943.

*Luis Mercader,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

De la prueba de cargo presentada en este caso en la Corte de Distrito de Arecibo aparece que el apelante, Mauricio Decós, guiando un automóvil público llegó al pueblo de Camuy y detuvo su vehículo frente a la plaza pública. En ese momento un policía insular se le acercó, detuvo el automóvil y en compañía de otro policía condujo al apelante arrestado al cuartel donde le pidieron la llave del baúl del automóvil para registrarlo "porque tenían sospechas" y porque "tenía confidencias de que llevaba ron allí". El apelante al principio se negó a entregar las llaves y luego solicitó ser llevado donde el juez municipal, lo que se hizo, y este funcionario, según declaró el policía, le dijo: "Mire, si usted tiene la llave, désela, que con allanamiento o sin allanamiento los guardias están dispuestos a abrirlo, si no, juran una declaración jurada para abrir el carro por orden mía." Uno de los policías que llevó al apelante al cuartel declaró que no tenía orden de arresto alguna y que no había cometido delito alguno en su presencia pero que "el guardia García podría explicar por qué lo arrestó". Este policía García fué el que primeramente detuvo el automóvil del apelante pero, a pesar de esto, no declaró en el juicio. Después de las manifestaciones del juez municipal el apelante salió a buscar la llave del baúl del automóvil y la entregó a la policía y al registrar encontraron una pipa y dos envases de cristal conteniendo ron. Se formuló denuncia por infracción a las secciones 21 y 77 de la Ley de Bebidas (Ley núm. 6 de 1936, sesión extraordinaria) y la corte inferior en apelación declaró al acusado culpable y le impuso cincuenta días de cárcel.

■■ El primer error alegado en apoyo del presente recurso de apelación es el siguiente:

"Al declarar sin lugar la solicitud sobre eliminación de evidencia, después de haber sido el acusado detenido y arrestado sin delito al-

guno, y registrado su automóvil sin cometer violación alguna ante la policía, en aquel instante, ni contar ésta con orden o mandamiento legal para tal propósito arbitrario.''

Es conveniente hacer constar que el acusado presentó antes del juicio ante la corte municipal una moción solicitando se eliminara la evidencia ocupada ilegalmente y que asimismo la reprodujo ante la corte inferior estipulándose en esta última que se resolvería después de verse el caso en su fondo, lo que hizo la corte declarándola sin lugar.

Sostiene el Fiscal de esta Corte que el registro efectuado en este caso fué legal porque ''todo se realizó entregándose voluntariamente por el acusado a la policía la llave del baúl del automóvil que conducía'' y que por tanto no hubo ''violación alguna de derechos constitucionales del acusado''. Empero, el Fiscal, al analizar la prueba en su alegato, admite que la policía *''sospechando* que se estaba violando la ley, paró al acusado, etc.''

En efecto, de toda la prueba de cargo lo único que surge es que, por razones, hechos o motivos no expresados por los dos policías que declararon, otro policía, García, que no declaró, detuvo al acusado y lo condujo arrestado sin orden de arresto alguna al cuartel y que allí le exigieron entregara la llave para registrar el automóvil y que, más tarde, ante la conminación del juez municipal de que con allanamiento o sin él la policía abriría el baúl, el acusado entregó la llave.

Somos de opinión que sancionar todo este procedimiento arbitrario e ilegal por el hecho de que el apelante al final del mismo entregara ''voluntariamente'' la llave del automóvil, sería convertir en letra muerta las garantías consagradas tanto por la Carta Orgánica como por nuestras leyes.

En primer término el arresto efectuado fué ilegal. No hay nada en la prueba de cargo que demuestre que el acusado había cometido delito alguno cuando fué detenido por el policía García y llevado arrestado al cuartel. El artículo 116 del Código de Enjuiciamiento Criminal expresamente

dispone en qué casos un oficial de orden público puede hacer un arresto sin una orden al efecto. Nada hay en el récord que demuestre que el apelante había cometido o que intentó cometer un delito en presencia del policía o que hubiera cometido *felony* o tuviera motivos racionales para creer que lo hubiera cometido. El único indicio del motivo de la detención lo da el acusado en su declaración cuando dijo que el policía García al detenerlo le dijo que estaba realizando "una investigación de una goma que se han robado" y le ordenó que abriera el baúl del automóvil, y al negarse el acusado lo llevó al cuartel y allí fué que, bajo las circunstancias descritas entregó la llave. El policía Benítez declaró que se le ordenó al apelante que abriera el baúl "porque tenía sospechas" pero no especificó en qué consistían esas sospechas ni a qué se referían.

En relación con el arresto de una persona y el registro de su automóvil bajo circunstancias como las del caso de autos, dice Cornelius en su obra "Search and Seizure", a la página 91, que el delito no se comete en presencia del funcionario " . . . en casos en que el licor intoxicante está oculto de la vista del funcionario en un automóvil o sobre la persona, y en muchos casos cuando la comisión del delito le es desconocida antes del arresto. En todos estos casos, un arresto hecho bajo estas circunstancias es ilegal y la prueba obtenida por un registro ilegal incidental a dicho arresto no es admisible en evidencia en aquellas cortes en que prevalece la doctrina de exclusión."

Aun cuando se trataba de un caso bajo la Ley Nacional de Prohibición, consideramos que los principios enunciados en *Pueblo* v. *Guzmán*, 34 D.P.R. 117, son aplicables al caso de autos. La contención del apelante en aquel caso fué que en ningún caso puede procederse al registro de un automóvil que transporte ilegalmente licores o que se dedique al contrabando de los mismos sin que medie previamente un

auto judicial de registro. La prueba en dicho caso, según se hizo constar en la opinión, a la página 120, fué la siguiente:

"En este caso la prueba establece que hubo motivos razonables para que los agentes del gobierno procedieran al registro del automóvil sin estar provistos de un auto judicial. Dicho vehículo caminaba por una carretera pública y a velocidad excesiva al pasar por el sitio en que estaban dos policías. *Éstos tuvieron conocimiento de que se estaba transportando licores entre Río Grande y Luquillo y esto, unido a la velocidad excesiva del carro que por sí infringía la ley que reglamenta el uso de vehículos de motor en Puerto Rico, despertó en dichos agentes la razonable creencia de que el automóvil transportaba licor, y determinó en ellos su persecución en otro automóvil, pudiendo detener su marcha y proceder al registro,* encontrando 36 botellas de brandy marca 'Hennessy', 'Tres Estrellas', 'de las 12 estaban en un saco pequeño, colocado en la parte trasera del carro, en el sitio destinado para poner los pies, y metidas dichas botellas dentro de cartuchos de paja y el resto de las botellas se encontraba debajo del asiento trasero del automóvil.' " (Bastardillas nuestras.)

Se citó entonces el caso de *U. S.* v. *Kaplan,* 286 Fed. 963, 973, en el que se resolvió que cuando se hace un registro sin mandamiento, es asimismo esencial que exista un fundamento razonable para ello y se dijo que "la mera infracción de la ley reglamentando la velocidad de vehículos de motor en carreteras públicas . . . justificaba a la policía para detener el automóvil y arrestar al *chauffeur*", y que "una vez detenido el automóvil, los agentes pudieron ver a la simple vista el saco que estaba en el sitio destinado para descansar los pies" y que por lo tanto el registro, sin mandamiento, fué legal de acuerdo con lo resuelto en el caso de *Boyd* v. *U. S.,* 286 Fed. 930. Por último se citó del caso caso de *Carroll* v. *U. S.,* 267 U. S. 132, la regla establecida por la Corte Suprema nacional para estos casos en esta forma:

"Por razón lógica y por las autoridades la verdadera regla es que si el registro e incautación sin orden se hacen *habiendo causa probable,* o sea *habiendo una creencia, razonablemente deducible de circunstancias conocidas al oficial incautador,* de que un automóvil u

otro vehículo contiene lo que por ley está sujeto a incautación y destrucción, el registro y la incautación son válidos . . .'' (Bastardillas nuestras.)

Termina la opinión de esta corte en el caso de *Guzmán,* supra, emitida por el Juez Asociado Sr. Franco Soto, haciendo constar lo siguiente:

''Se hace conveniente dejar aclarado, sin embargo, que ya establecida la regla para poder registrar sin mandamiento judicial un automóvil u otro vehículo de motor que oculta contrabando, *un registro caprichoso o por meras sospechas no sería justificable.* De ahí es la línea divisoria de legal o ilegal, según las circunstancias del caso, que se tiende a establecer en el caso de Carroll que hemos citado.''

En la obra de Cornelius, sección 49, página 178 a 180, se comenta extensamente el caso de *Carroll,* supra, y se dice que aun cuando dicho caso se basó en la Ley de Prohibición Nacional y los poderes que le concedía a funcionarios federales, el razonamiento que usó la corte para llegar a sus conclusiones es aplicable con igual fuerza a otras violaciones de ley que no sean la de Prohibición Nacional ''cuando el funcionario tiene causa probable para creer que un delito en contra de cualquier ley federal se está cometiendo en su presencia con un automóvil'', y el autor expresa su creencia de que las cortes estatales seguirán la ''sana y brillante opinión del Juez Taft . . . pues el razonamiento de dicha opinión parece ser inexpugnable.''

En 39 A.L.R. 811 puede consultarse una extensa monografía a continuación del caso de *Carroll* v. *U. S.,* supra, la que es ampliada en 74 A.L.R. 1418, citándose innumerables casos sobre la materia, y específicamente sobre la cuestión aquí envuelta se dice a la página 1458:

''El frecuente uso de automóviles en violación de las leyes sobre licores y la impracticabilidad de obtener órdenes de allanamiento a tiempo para realizar un registro efectivo, ha llevado a las cortes a sostener dichos registros como razonables sin dichas órdenes. Sin embargo, como demuestran los casos a continuación, la *mera sospecha* de la violación de las leyes sobre licores no es suficiente para justifi-

car el registro sin una orden. Deben existir tales circunstancias que demuestren a la mente de una persona de ordinaria prudencia que existe causa probable para el registro.''

''Sin embargo, la regla está demasiado bien establecida para requerir cita de autoridades de que la razonabilidad del registro no puede ser determinada por el resultado que se obtenga.''

En el caso de autos uno de los policías declaró que *después* de haber llevado al apelante arrestado al cuartel notó que del baúl del automóvil salía un olor a alcohol y que fué por eso que quisieron registrarlo. En relación con esto surgen dos cuestiones, primero, que el apelante había sido arrestado ilegalmente ya que, como hemos dicho, no hay nada en la prueba que demuestre que había cometido un delito en presencia del policía, y segundo, que habiendo sido derogada la Ley de Prohibición sobre licores y siendo por tanto legal su transportación, no puede constituir causa probable para un registro sin una orden el hecho de que de un automóvil emane olor a alcohol. El delito imputado en este caso es uno de transportación de bebidas sin haberse adherido a los envases las estampillas de rentas internas correspondientes. Si, como en el caso de *Pueblo* v. *Guzmán,* supra, los envases hubieran estado a la vista de la policía y se hubieran dado cuenta por dicho sentido que no tenían los sellos adheridos tanto el arresto como el registro hubieran sido legales. Empero, ¿en qué forma puede lógicamente decirse que por el sentido del olfato se pueda determinar que unos envases no tienen adheridos unos sellos y que pueda aplicarse a este caso la regla de la causa probable para el registro sin una orden?

Por último resta considerar el aspecto de voluntariedad que quiere darse al registro por el hecho de que el apelante entregó la llave del baúl del automóvil. Los hechos expuestos anteriormente demuestran que el apelante se opuso en todo momento a que el automóvil fuera registrado y que no fué hasta que el juez municipal le dijo que ''con allanamiento o sin allanamiento'' la policía registraría el automó-

vil y que si era necesario prestaría un juramento para hacerlo. Somos de opinión que bajo estas circunstancias no puede sostenerse que el acusado consintió el registro por el hecho de haber entregado la llave. Si los funcionarios policíacos llamados a cumplir la ley fueron los que desde un principio la violaron y luego el funcionario judicial en lugar de obligar a los policías allí presentes a prestar las declaraciones juradas requeridas por los artículos 503 y 505 del Código de Enjuiciamiento Criminal en relación con los hechos que tendían a demostrar la causa probable para expedir una orden de allanamiento, conminó al apelante en la forma en que lo hizo, no podemos sostener que fué el apelante quien voluntariamente se sometió al registro efectuado. Además, los hechos probados demuestran que no fué él quien abrió el baúl del automóvil sino el policía.

En el reciente caso de *Pueblo* v. *Capriles,* 58 D.P.R. 548, aun cuando se trataba de una orden de allanamiento ilegalmente expedida para registrar una casa, tuvimos ocasión de revisar la jurisprudencia sobre la admisión de prueba ilegalmente ocupada. Citamos, no solamente la prohibición contenida en la Carta Orgánica sobre el derecho a estar garantizados contra registros y embargos arbitrarios, sino también nuestra "Ley Disponiendo los Derechos del Pueblo" aprobada el 27 de febrero de 1902, y llegamos a la conclusión de que la orden de allanamiento era nula por no haberse expuesto en los *affidavits* los hechos que justificaban la causa probable para el registro efectuado y resolvimos que la corte inferior no debió admitir en evidencia la prueba así ocupada y absolvimos al acusado.

A la misma conclusión tenemos que llegar en el caso de autos pues eliminados del caso los envases ilegalmente ocupados no hay prueba alguna contra el acusado. No creemos necesario entrar a considerar la versión del acusado y sus testigos sobre la forma en que una tercera persona puso el ron en el baúl del automóvil. La corte inferior no dió cré-

dito á esa prueba y de no haberse cometido el primer error imputado no variaríamos la conclusión del juez sentenciador al no dar crédito a dicha prueba. Pero consideramos que la cuestión constitucional envuelta es primordial en este caso.

*Debe revocarse la sentencia apelada y absolverse al apelante Mauricio Decós.*