El Juez Asociado Señor Kolthoff Caraballo
emitió la opinión del Tribunal.
(En reconsideración)
Nos corresponde determinar si procede la supresión de evidencia real obtenida como producto de las declaraciones realizadas por un abogado en violación al privilegio abogado-cliente por alegadamente considerarse “finito del árbol ponzoñoso”.
El 9 de diciembre de 2011 emitimos una opinión en Pueblo v. Fernández Rodríguez, 183 DPR 770 (2011), en la que resolvimos que constituye materia privilegiada inadmisi *168 ble en evidencia toda información ofrecida a un agente del orden público por el abogado de una persona que lo vincula con conducta delictiva, sin que esa persona haya renunciado al privilegio abogado-cliente. Asimismo, suprimimos toda evidencia real obtenida como producto de la información revelada al agente del orden público, conforme a la normativa sobre el privilegio abogado-cliente y la garantía constitucional a la no autoincriminación.(1)
Reconsideramos nuestra posición con el único efecto de establecer que la doctrina del "fruto del árbol ponzoñoso” no se extiende para suprimir evidencia real obtenida como producto de una violación al privilegio abogado-cliente.(2)
I
Los hechos que son pertinentes se encuentran perfectamente reseñados en la opinión que hoy reconsideramos, Pueblo v. Fernández Rodríguez, supra, págs. 776-783, y que pasamos a reproducir:
El caso que nos ocupa tiene su génesis en un doble asesinato ocurrido el 1 de noviembre de 2006, en el barrio Venezuela de Río Piedras. Se deduce del legajo, que en horas de la tarde de ese día Waldemar Fernández Rodríguez acudió al Cuartel General de la Policía (Cuartel General) en compañía de su abogado, Ledo. Luis Carbone, y de su amigo, también abogado, el Ledo. Ovidio Zayas. Una vez en el Cuartel General, el señor Fernández Rodríguez, el licenciado Carbone y el licenciado Zayas fueron entrevistados por el sargento José Curbelo Muñiz, adscrito a la División de Homicidios. Véase Apéndice de la Petición de certiorari, pág. 15.
A preguntas del sargento Curbelo, el licenciado Carbone ex-presó que en ese momento su cliente no emitiría declaración alguna sobre los hechos, pero que posteriormente sí lo haría. *169 Consecuentemente, el sargento Curbelo le leyó las advertencias de ley al señor Fernández Rodríguez y este las firmó en presencia de su abogado. Luego, el señor Fernández Rodríguez fue puesto en una celda bajo la custodia de otros agentes. Acto seguido, el sargento Curbelo se reunió aparte y a solas con el licenciado Carbone para indagar sobre el arma con que alegadamente se habían cometido los asesinatos. Véase Apéndice de la Petición de certiorari, págs. 15-16.
A raíz de la investigación de los hechos, se presentaron sendas denuncias contra el peticionario. El 3 de enero de 2007 se celebró la vista al amparo de la Regla 6 de Procedimiento Criminal, 34 LPRA Ap. II. El peticionario estuvo representado por varios abogados, entre ellos el licenciado Carbone. Estos no objetaron el testimonio en cuestión del sargento Curbelo. Escuchada la prueba, se determinó causa probable para arresto contra el señor Fernández Rodríguez. La vista preliminar fue señalada para el 17 de enero de 2007. Véase Apéndice de la Petición de certiorari, pág. 145.
Luego de varias suspensiones, la vista preliminar comenzó el 25 de mayo de 2007, y se extendió por varios meses. Ese día las partes estipularon la prueba siguiente: (1) el informe de balística; (2) la prueba de ADN; (3) el análisis forense de la ropa incautada al señor Fernández Rodríguez; (4) servilletas y marcas de sangre de mío de los occisos, y (5) el registro del arma de fuego y la licencia de tiro al blanco del señor Fernández Rodríguez. Véase Apéndice de la Petición de certiorari, págs. 146-147.
Posteriormente, en la continuación de la vista preliminar los días 25 y 29 de octubre de 2007, el Ministerio Público presentó como parte del desfile de prueba siete testigos, entre los que figuró el sargento Curbelo. Este declaró que el día 1 de noviembre de 2006, como a las 5:00 p.m., escuchó por radio que hubo una muerte violenta en la barriada Venezuela de Río Piedras, por lo que se personó al lugar. Estando en la escena, fue instruido para que acudiera al Cuartel General debido a que allí se encontraba una persona relacionada a los hechos acaecidos acompañado de dos abogados. El testigo añadió que en el Cuartel General entrevistó al licenciado Carbone y que este le indicó que representaba al señor Fernández Rodríguez. Específicamente, señaló que el licenciado Carbone le expresó que el señor Fernández Rodríguez no haría declaración alguna en ese momento ya que estaba muy nervioso y que posteriormente ofrecería una declaración completa de los hechos ocurridos. Véase Transcripción de Vista Preliminar de 25 y 29 de octubre de 2007, págs. 6-9, CC-2009-0622, Pieza 2.
El sargento Curbelo declaró, además, que con posterioridad *170 a que el licenciado Carbone le informara que su cliente guardaba relación con los hechos ocurridos en la barriada Venezuela, ellos tres (el señor Fernández Rodríguez, el licenciado Carbone y él) se ubicaron en una oficina del cuartel para hacerle las advertencias de ley al imputado. Así, señaló que el señor Fernández Rodríguez leyó las advertencias de rigor y las firmó en presencia de su abogado. Continuó narrando que el señor Fernández Rodríguez fue puesto bajo la custodia de otro agente en un lugar distinto a la oficina donde se encontraban, por lo que procedió a entrevistar a solas al licenciado Carbone. Véase Transcripción de Vista Preliminar de 25 y 29 de octubre de 2007, págs. 46-47 y 49, CC-2009-0622, Pieza 2.
Así las cosas, el sargento Curbelo declaró que durante la entrevista el licenciado Carbone manifestó que su cliente era extorsionado por los occisos desde hacía un tiempo. De inmediato, el sargento Curbelo inquirió al licenciado Carbone sobre la localización del arma de fuego utilizada para cometer los asesinatos, a lo que este contestó que estaba tirada en rma jardinera de una casa aledaña al área de los hechos. Con esa información, el sargento Curbelo procedió a llamar a la agente Daliza Ortiz Claudio, quien se encontraba en la escena del crimen. Una vez estableció comunicación con la agente, el sargento Curbelo pasó el teléfono al licenciado Carbone para que este explicara a la agente Ortiz Claudio los detalles sobre la ubicación exacta del arma. Al no poder localizar el cargador ni las municiones, pero sí el arma de fuego, la agente Ortiz Claudio llamó de vuelta al sargento Curbelo para explicarle lo sucedido. Así, el sargento Curbelo la comunicó nuevamente con el licenciado Carbone y este le indicó a la agente dónde estaban el cargador y las municiones. Véase Transcripción de Vista Preliminar de 25 y 29 de octubre de 2007, págs. 12-14, CC-2009-0622, Pieza 2.
En su contrainterrogatorio, el sargento Curbelo reconoció que la información abogado-cliente es de naturaleza privilegiada. De igual forma, a preguntas de la defensa, indicó que una vez le hizo las advertencias de ley al señor Fernández Rodríguez no le preguntó si iba a emitir una declaración, ya que el licenciado Carbone le había dicho expresamente que su cliente no iba a hacer manifestación alguna porque se encontraba muy nervioso. Asimismo, el testigo añadió que, a su en-tender, el señor Fernández Rodríguez no había hecho renuncia alguna a su privilegio abogado-cliente, como tampoco autorizó al licenciado Carbone a que declarara por él. Véase Transcripción de Vista Preliminar de 29 de octubre de 2007 y 7 de mayo de 2008, págs. 47-52, CC-2009-0622, Pieza 2. Finalmente, durante su contrainterrogatorio, el sargento Curbelo admitió que *171 no preguntó al señor Fernández Rodríguez si renunciaba a sus derechos constitucionales y que este no había autorizado al licenciado Carbone a divulgarle información privilegiada. Id.
En consecuencia, el señor Fernández Rodríguez solicitó que se suprimiera el testimonio del sargento Curbelo, así como la evidencia ocupada. En apoyo de su petitorio, el imputado adujo que el testimonio del sargento Curbelo era inadmisible debido a que era producto de una declaración confidencial que él le hizo a su abogado, que esta declaración era de naturaleza privilegiada y que estaba cobijada por el privilegio abogadocliente. También alegó, que el arma y las municiones ocupadas constituían finitos del árbol ponzoñoso pues su descubrimiento fue producto directo de una conversación privilegiada. Véase Apéndice de la Petición de certiorari, pág. 146.
Luego de diversos trámites procesales, en febrero de 2008 el Tribunal de Primera Instancia emitió una resolución mediante la cual descalificó al licenciado Carbone como abogado del señor Fernández Rodríguez y lo citó para que compareciera como testigo a la vista de supresión de evidencia. Además, el foro primario citó como testigo al licenciado Zayas, quien estuvo presente en ciertas conversaciones entre el licenciado Carbone y el imputado Fernández Rodríguez. Todo ello en aras de escudriñar adecuadamente la solicitud de supresión del testimonio del sargento Curbelo. Véase Apéndice de la Petición de certiorari, pág. 146. Véase, además, Transcripción de Vistas de 29 de octubre 2007 y 7 de mayo de 2008, págs. 106-108, CC-2009-0622, Pieza 2.
Así, pues, el 7 de mayo de 2008 el Tribunal de Primera Instancia celebró una vista de supresión de evidencia en la que testificaron el licenciado Carbone y el licenciado Zayas, entre otros. En esencia, el licenciado Carbone negó haber informado al sargento Curbelo sobre la localización del arma, cargador y municiones debido a que no estuvo en el lugar de los hechos y desconocía totalmente esta información. Véase Transcripción de Vistas de 29 de octubre 2007 y 7 de mayo de 2008, págs. 106-108, CC-2009-0622, Pieza 2. Véase, además, Apéndice de la Petición de certiorari, pág. 146. Por su parte, el licenciado Zayas testificó, en lo pertinente, que el 1 de noviembre de 2006 acompañó al señor Fernández Rodríguez al Cuartel General en calidad de amigo y no como su abogado. Véase Apéndice de la Petición de certiorari, págs. 146-147.
Culminada la vista de supresión de evidencia, el 9 de mayo de 2008 el Tribunal de Primera Instancia dictó dos resoluciones. En la primera de ellas, el foro primario declaró no ha lugar la moción de supresión de evidencia presentada por el señor Fernández Rodríguez. En el referido dictamen, el *172 tribunal de instancia señaló que no confirió credibilidad al testimonio del licenciado Carbone ni al del licenciado Zayas porque habían omitido hechos importantes y fueron inconsistentes sus declaraciones. Véase Apéndice de la Petición de certiorari, pág. 147.
Cónsono con lo anterior, el tribunal primario sostuvo que no se había violado el privilegio abogado-cliente del señor Fernández Rodríguez. Ello, debido a que su intención siempre fue acudir al Cuartel General para entregarse. A esos efectos, añadió que Fernández Rodríguez compareció acompañado y asesorado por su abogado, el licenciado Carbone, se presentó con la intención de hacer unas declaraciones sobre un doble asesinato que había ocurrido esa misma tarde y estuvo presente cuando su abogado divulgó la razón para su comparecencia. Véase Apéndice de la Petición de certiorari, págs. 65 y 146-147.
Por otra parte, en la segunda resolución, el Tribunal de Primera Instancia determinó causa probable para acusar por dos cargos de asesinato, dos cargos al amparo del Art. 5.15 y un cargo por infracción al Art. 5.04 de la Ley Núm. 404-2000, según enmendada, conocida como Ley de Armas de Puerto Rico. Véase Apéndice de la Petición de certiorari, pág. 65.
Subsiguientemente, el 16 de mayo de 2008 el Pueblo presentó las acusaciones según autorizadas contra el señor Fernández Rodríguez. El 9 de junio del mismo año, el imputado presentó una Moción de Desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, 34 LPRAAp. II. En su escrito adujo que la determinación de causa probable para acusar fue contraria a derecho debido a que la prueba presentada en la vista preliminar era inadmisible e ilegal por ser producto de información privilegiada, la cual fue confiada por el imputado a su representante legal. Además, señaló que la única prueba que lo ataba a los hechos era el testimonio del sargento Curbelo y que, siendo el mismo inadmisible, la determinación de causa probable era contraria a derecho. Oportunamente, el 7 de agosto de 2008 la Fiscalía presentó su oposición al petitorio de desestimación presentada por el imputado. Véase Apéndice de la Petición de certiorari, págs. 65-69.
Luego de varias incidencias procesales, el 29 de diciembre de 2008 el foro primario emitió una resolución en la que denegó la solicitud de desestimación del imputado. En su dicta-men puntualizó que aunque el señor Fernández Rodríguez no renunció a su privilegio abogado-cliente, el testimonio del sargento Curbelo era admisible. Ello, debido a que el sargento Curbelo actuó conforme a la doctrina de “autoridad aparente”. Es decir,
*173 .. el sargento Curbelo estaba convencido de que el licenciado Carbone estaba autorizado a divulgar [la] información que divulgó. Ciertamente aparentaba tenerla. Las propias actuaciones del licenciado Carbone son las que dan base “a la buena fe de los agentes de la policía y permite llegar a una creencia o conclusión razonable de que la persona que representa tener la autoridad... la tiene”. Apéndice de la Petición de certiorari, pág. 86.
Inconforme, el 28 de enero de 2009 el imputado presentó un recurso de certiorari ante el Tribunal de Apelaciones. El Ministerio Público, por su parte, se opuso oportunamente. Estudiados los argumentos de las partes, el 22 de mayo de 2009 el Tribunal de Apelaciones dictó una sentencia y confirmó la resolución recurrida. Sostuvo que la determinación de causa probable para acusar fue conforme a derecho ya que el peticionario renunció tácitamente al privilegio abogado-cliente. Ello, pues la prueba desfilada reveló que su intención siempre fue acudir al Cuartel General para entregarse. Véase Apéndice de la Petición de certiorari, pág. 172.
Además, el foro apelativo intermedio señaló que el peticionario no objetó oportunamente el testimonio del sargento Curbelo durante la vista de causa probable para arresto. Por esta razón, dicho foro coligió que era innecesario que el Tribunal de Primera Instancia aplicara por analogía la doctrina de “autoridad aparente”. Apéndice de la Petición de certiorari, pág. 172.
Nuevamente insatisfecho, el 21 de julio de 2009 el imputado presentó una petición de certiorari ante este Tribunal. En ella señaló la comisión de los errores siguientes:
“Erró el Tribunal de Apelaciones al confirmar la resolución del Tribunal de Primera Instancia denegando la moción de desestimación presentada por el peticionario bajo las disposiciones de la Regla 64(p) de Procedimiento Criminal a pesar de que la determinación de causa probable fue contraria a derecho ya que la misma se basó en prueba que legalmente no era admisible.
Es errada la decisión del foro apelativo intermedio a los efectos de que medió orna renuncia implícita al privilegio abogado-cliente porque: el peticionario había comparecido voluntariamente al Cuartel General de la Policía en relación a una investigación de irnos hechos delictivos; la información ofrecida por el abogado que lo representó en ese momento no fue compelido a ofrecer la información en relación a dónde se encontraba el arma de fuego sino que brindó voluntariamente y sin coacción tal información; y no invocó oportunamente dicho *174 privilegio en el procedimiento judicial seguido en su contra”. Petición de certiorari, págs. 5-6.
Como señalamos, el 9 de diciembre de 2011 emitimos una opinión en la que determinamos que era inadmisible en evidencia toda evidencia real obtenida como producto de información ofrecida por un abogado en violación al privilegio abogado-cliente. El Procurador General ha comparecido y solicita la reconsideración de tal dictamen.
II
A. La regla de exclusión conocida como la doctrina del “fruto del árbol ponzoñoso”
La regla de exclusión conocida como la doctrina del “fruto del árbol ponzoñoso” fue establecida por el Tribunal Supremo federal en Silverthorne Lumber Co. v. U.S., 251 US 385 (1920), en el contexto de excluir evidencia derivada de una violación a la Cuarta Enmienda de la Constitución de Estados Unidos.(3) En ese caso el Tribunal Supremo federal expresó que “[l]a esencia de la disposición que prohíbe adquirir evidencia de cierta manera, no es meramente que la evidencia así adquirida no será usada en los tribunales, sino que no será usada de ninguna manera”.(4) (Traducción nuestra).
No obstante, el tratadista estadounidense Wayne R. La-Fave explica que la doctrina del “fruto del árbol ponzoñoso” no se limita a los casos en que se ha violado la Cuarta Enmienda, también se ha utilizado cuando han ocurrido otras violaciones constitucionales, como las ruedas de detenidos y las confesiones obtenidas en violación a los dere *175 chos constitucionales.(5) Es importante señalar que, en el foro federal, esta doctrina se ha utilizado mayormente en situaciones en las que se ha obtenido evidencia como producto de arrestos o registros ilegales, interrogatorios ilegales e identificaciones ilegales.(6)
En 1961 con el caso de Mapp v. Ohio, 367 US 643 (1961), el Tribunal Supremo federal incorporó la regla de exclusión a los estados, a través de la Decimocuarta Enmienda.(7) El caso resolvió que toda evidencia obtenida en violación a la Cuarta Enmienda bien por funcionarios federales o estatales, será inadmisible tanto en las cortes federales como en las estatales.(8) Sin embargo, esta pauta no obligó a los estados a implantar una regla de exclusión con relación a la evidencia obtenida en violación de la ley o el derecho estatal.(9) Esto es, los estados, incluyendo Puerto Rico, están obligados a utilizar la regla de exclusión cuando se obtiene evidencia en violación a la Cuarta Enmienda, pero no así cuando se obtiene evidencia en violación a un derecho estatal. En esas instancias, Puerto Rico, como cada estado, tiene la discreción de implantar o no la regla de exclusión.
En nuestra jurisdicción, más de una década antes de Mapp v. Ohio, supra, y antes de la promulgación de nuestra Constitución, ya se había incorporado una regla de exclusión mediante jurisprudencia.(10) No obstante, el único propósito de esa regla de exclusión era evitar que *176 funcionarios gubernamentales se beneficiaran de actuaciones claramente ilegales.(11) Luego, los miembros de la Convención Constituyente optaron por incorporar la regla de exclusión creada por el Tribunal Supremo federal en Silverthorne Lumber Co. v. U.S., supra, expresamente al texto de la Constitución.(12) Así, y en lo pertinente, el Art. II, Sec. 10 de nuestra Constitución dispone claramente que “[e] videncia obtenida en violación a esta sección será inadmisible en los tribunales”.(13)
B. Aplicación de la doctrina del “fruto del árbol ponzoñoso” para suprimir evidencia real obtenida en violación a los privilegios probatorios
1. Estados Unidos
Como mencionáramos, el foro federal ha utilizado mayormente la doctrina del “fruto del árbol ponzoñoso” cuando se ha obtenido evidencia real como producto de la violación a la Cuarta Enmienda. Más aún, aunque el Tribunal Supremo federal nunca ha establecido expresamente que esa doctrina solo se circunscribe a violaciones a la mencionada enmienda, lo cierto es que, al día de hoy, ese foro no ha resuelto ninguna controversia en la cual se haya aplicado la doctrina del “fruto del árbol ponzoñoso” a evidencia obtenida en violación a uno de los privilegios probatorios, como el de abogado-cliente.
Sin embargo, varios circuitos del Tribunal de Apelaciones federal sí han tenido la oportunidad de expresar si la doctrina del “fruto del árbol ponzoñoso” aplica para suprimir evidencia real obtenida como producto de violaciones a privilegios no constitucionales. Todos los circuitos han llegado a la conclusión de que la doctrina del “fruto del árbol *177 ponzoñoso” no aplica cuando se ha obtenido evidencia real en violación a los privilegios probatorios.(14) Estos interpretaron que esa doctrina está limitada a las violaciones de privilegios constitucionales. Incluso, el Tribunal de Apelaciones para el Noveno Circuito expresó que ningún tribunal ha aplicado la doctrina del “fruto del árbol ponzoñoso” a los privilegios probatorios.(15)
De manera persuasiva, veamos lo que dos circuitos del Tribunal de Apelaciones federal resolvieron en controversias en las que se quería aplicar la mencionada doctrina para suprimir evidencia obtenida como producto de la violación al privilegio abogado-cliente.
Tan reciente como en el 2010, el Tribunal de Apelaciones para el Sexto Circuito resolvió el caso de U.S. v. Warshak, 631 F.3d 266 (6to Cir. 2010). En ese caso, el gobierno se encontraba investigando a Berkeley Premium Nutraceuticals, Inc. Durante un registro de las oficinas principales, los agentes copiaron el contenido de unas noventa computadoras. Entre los documentos obtenidos se encontraban documentos protegidos por el privilegio abogadocliente.(16) Además, a través de una orden del tribunal, tuvieron acceso al correo electrónico de la corporación. En el correo electrónico existían más de 60,000 comunicaciones con abogados.(17) El Sr. Steven Warshak alegó que esos documentos se obtuvieron en violación al privilegio abogadocliente y, por consiguiente, pidió que se suprimieran. Al respecto, el Tribunal de Apelaciones para el Sexto Circuito resolvió que no encontró ninguna autoridad que indicara que la evidencia derivativa obtenida en violación al privi *178 legio abogado-cliente es suprimible.(18) Al respecto expresó lo siguiente:
[W]e agree that it is unwise to extend the fruit-of-the-poisonous-tree doctrine beyond the context of constitutional violations.(19) (Énfasis nuestro).
En Nickel v. Hannigan, 97 F.3d 403 (10mo Cir. 1996), el Tribunal de Apelaciones para el Décimo Circuito negó aplicar la doctrina del “fruto del árbol ponzoñoso” a la violación del privilegio abogado-cliente. En este caso, el Sr. Willie Nickel acudió a la oficina del abogado Dan Boyer y confesó que había asesinado a una señora.(20) Luego de que el señor Nickel se marchara, el abogado llamó a la Policía e indicó que el señor Nickel posiblemente había cometido un asesinato. Más tarde, el licenciado Boyer llamó al señor Nickel y le aconsejó que acudiera a la Policía a entregarse.(21) Siguiendo el consejo del abogado, el señor Nickel se entregó. Durante el interrogatorio, el señor Nickel solicitó un abogado y se le asignó al abogado William Mize para que lo representara. En la vista preliminar, el Ministerio Público sentó al licenciado Boyer a testificar contra el acusado. El licenciado Mize objetó el testimonio aduciendo que ese testimonio violaba el privilegio abogado-cliente que existía entre el licenciado Boyer y el señor Nickel. Sin embargo, el tribunal permitió el testimonio.(22) El licenciado Boyer se sentó nuevamente a testificar en el juicio. Así las cosas, el señor Nickel fue hallado culpable por asesinato en primer grado. El señor Nickel alegó que el licenciado Mize violó la Sexta Enmienda al no representarlo adecuadamente, esto por no objetar el testimonio del licenciado Boyer en el juicio. El Tribunal de Apelaciones para el Décimo Circuito expresó que:
*179 [Although Mr. Nickel’s confession to Detective Marble could be considered the result of Mr. Boyer’s breach of Mr. Nickel’s attorney-client privilege in reporting Mr. Nickel to the police, there is no indication that Kansas law requires the exclusion of all evidence derived from a breach of an attorney-client privilege. Further, other courts have refused to apply such a broad evidentiary rule of exclusion to breaches of privilege.
[R] ejecting the application of the fruit of the poisonous tree doctrine to evidence obtained from a breach of attorney-client privilege and reasoning that “the marginal effectiveness of denying use to an innocent [state] agency for reports produced not by a state but by a private citizen is not justified”.(23) (Énfasis nuestro).
Por otra parte, también existe jurisprudencia dé distintos estados que, al igual que los circuitos del Tribunal de Apelaciones federal, han resuelto que la doctrina del “fruto del árbol ponzoñoso” no aplica a evidencia obtenida en violación a los privilegios probatorios.(24) Por ejemplo, en el estado de Florida el Tribunal de Apelaciones para el Cuarto Distrito resolvió el caso State v. Sandini, 395 So.2d 1178 (1981). En ese caso, el abogado del acusado violó el privilegio abogado-cliente y ofreció a la Policía cierta información que fue esencial para establecer causa probable para realizar un registro. El tribunal apelativo expresó que no existe justificación suficiente para extender la regla de exclusión para suprimir evidencia obtenida como producto de las declaraciones voluntarias de un abogado en violación al privilegio abogado-cliente.(25) Añadió que el cliente que haya sufrido daños por esa violación podrá incoar una demanda civil contra el abogado y podrá presentar una queja por violación al Código de Ética Profesional.(26)
Podemos observar que, según los tribunales han interpretado la doctrina del “fruto del árbol ponzoñoso” y los *180 privilegios probatorios, la violación de tales privilegios no conlleva la supresión de los frutos obtenidos.(27) Y es que, los privilegios probatorios proveen una protección limitada a comunicaciones confidenciales. Una de esas limitaciones es que los frutos que se obtengan por comunicaciones no autorizadas, en violación a los privilegios, no son excluidos como evidencia.(28) La comunicación privilegiada revelada será excluida por hacerse en violación al privilegio, sin embargo no será una justificación para que se excluya la evidencia derivada de esa comunicación.(29)
2. Puerto Rico
Como mencionamos, el caso Mapp v. Ohio, supra, resolvió que toda evidencia obtenida en violación a la Cuarta Enmienda, por funcionarios federales o estatales, será inadmisible tanto en las cortes federales como en las cortes estatales. Sin embargo, los estados pueden optar por no aplicar la regla de exclusión a evidencia obtenida en violación al derecho estatal que no constituye violación a la Cuarta Enmienda.(30) Esto quiere decir que si agentes estatales violan un derecho estatal, pero no la Cuarta Enmienda, no aplica la regla de exclusión de esa enmienda.(31) El derecho estatal determinará si la evidencia es admisible en la corte estatal.(32)
Por otro lado, nuestra regla de exclusión es de naturaleza constitucional. En otras palabras, al aprobarse nuestra Constitución en 1952, Puerto Rico optó por incorporar expresamente la regla de exclusión federal en la See. *181 10 de su Carta de Derechos.(33) Desde entonces, la jurisprudencia de esta Curia no se ha apartado de la interpretación del Tribunal Supremo federal con relación al alcance de la regla de exclusión.(34) Esto es, la doctrina del “fruto del árbol ponzoñoso” se ha utilizado por este Tribunal para suprimir evidencia obtenida como fruto de registros ilegales,(35) arrestos ilegales(36) y detenciones ilegales de un vehículo.(37) Además, hemos suprimido confiscaciones producto de registros ilegales,(38) confesiones producto de detenciones y registros ilegales(39) e identificaciones de acusados producto de detenciones ilegales.(40) Sin embargo, nunca hemos avalado la utilización de la regla de exclusión para suprimir evidencia obtenida en violación a otros derechos estatales, como lo son los privilegios probatorios.
Antes de incorporar la regla de exclusión a nuestra Constitución, en la Convención Constituyente se presentaron seis proposiciones que disponían sobre la inadmisibilidad de la evidencia obtenida en violación de alguna sección de la Constitución.(41) Luego, en el Informe de la Comisión de la Carta de Derechos se expresó que el propósito de la regla de exclusión era “dar garantía adicional y efectiva a estos derechos [los contenidos en el Art. II, Sec. 10]”.(42) Así las cosas, los padres de la Convención Constituyente tomaron la decisión de incorporar esta doctrina al Art. II, Sec. *182 10 de la Constitución, supra. Fundamentaron su decisión en que existía un interés público de hacer valer la garantía contra registros, detenciones o incautaciones irrazonables.(43)
En Toll y Sucn. Rivera Rojas v. Adorno Medina, 130 DPR 352, 358-359 (1992), expresamos los propósitos de incluir esta regla de exclusión al Art. II, Sec. 10 de nuestra Constitución, supra. En lo pertinente, expusimos que:
[L\a regla de exclusión encama tres (3) propósitos ínsitos en el Art. II, Sec. 10, supra. Primero, disuadir y desalentar a los funcionarios del orden público de que violen la protección constitucional (deterrence). Se reconoce que este elemento disuasivo realmente es el más fundamental. Segundo, integridad judicial. Los tribunales no deben ser cómplices de actos de desobediencia a la Constitución y admitir evidencia ilegalmente obtenida. Y tercero, impedir que el Gobierno se beneficie de sus propios actos ilícitos; de otra manera la ciudadanía perdería confianza en el Gobierno. (Énfasis nuestro).(44)
En conclusión y en esencia, la doctrina del “fruto del árbol ponzoñoso” se estableció con el propósito de evitar que los agentes del gobierno obtengan evidencia de forma reñida con la protección constitucional. Esta doctrina no se incorporó en ninguna otra sección de la Constitución y tampoco se ha extendido a ningún otro derecho estatal.
III
Argumenta el Procurador General que “la supresión de las declaraciones privilegiadas no acarrea la supresión de la evidencia real (el arma, cargador y municiones)”. Le asiste la razón al Procurador General. Veamos.
El Tribunal Supremo federal estableció la doctrina del “fruto del árbol ponzoñoso” en violaciones a la Cuarta Enmienda. En cuanto a los estados, incluyendo a Puerto *183 Rico, solamente dispuso que tenían que aplicar la regla de exclusión cuando se viola la Cuarta Enmienda, ya sea por funcionarios federales o estatales. Sin embargo, no limitó a los estados a utilizar la doctrina en leyes o derechos estatales. Así las cosas, Puerto Rico optó por incorporar la regla de exclusión al Art. II, Sec. 10 de nuestra Constitución, supra. Esto implica que la doctrina en Puerto Rico es de naturaleza constitucional y aplica cuando se obtiene evidencia por registros, detenciones o incautaciones irrazonables. No hemos extendido la doctrina del “fruto del árbol ponzoñoso” cuando se han violado otras leyes o derechos estatales.
Por otra parte, resulta importante advertir que los privilegios probatorios tienen su propia regla de exclusión. Esta regla de exclusión establece que toda comunicación privilegiada revelada en violación al privilegio será inadmisible como evidencia. Nótese que la propia regla limita su alcance a la comunicación per se, no incluye aquella evidencia que surja como consecuencia de esa comunicación. Por lo tanto y según lo anterior, cuando se viola un privilegio probatorio se excluirá únicamente la comunicación que se hizo en violación al privilegio. En conclusión, no existe ninguna norma en Puerto Rico ni en Estados Unidos que justifique extender la doctrina del “fruto del árbol ponzoñoso” a evidencia real obtenida en violación a estos privilegios.
En el caso de autos, en primer lugar debemos resaltar el hecho de que el agente del orden público no actuó de manera abusiva ni maliciosa para obtener evidencia de manera ilegal. Quien violó el privilegio abogado-cliente y actuó contrario al derecho vigente fue el abogado del acusado.(45) Una vez el policía le preguntó al abogado *184 dónde se encontraba el arma, su obligación era levantar el privilegio abogado-cliente, pero no lo hizo. Esa declaración del abogado se hizo en violación al privilegio abogadocliente y, por lo tanto, esa comunicación privilegiada no es admisible como evidencia. Sin embargo, la evidencia que se obtuvo como fruto de esa comunicación, en este caso el arma, el cargador y las municiones, sí es admisible en evidencia. Esta evidencia real no se obtuvo por actuaciones ilegales de los agentes, en violación al Art. II, Sec. 10 de nuestra Constitución, supra, sino por el testimonio que realizó el abogado en violación al privilegio abogadocliente. Por lo tanto, aplica la regla de exclusión de los privilegios probatorios, mas no la doctrina del “fruto del árbol ponzoñoso” para suprimir la evidencia real obtenida.
El cliente que se ve afectado por la violación al privilegio abogado-cliente tiene dos remedios: (1) presentar una demanda civil por daños contra el abogado, y (2) procurar una acción disciplinaria contra el abogado.
IV
Por todo lo anterior, reconsideramos lo resuelto en Pueblo v. Fernández Rodríguez, supra, y establecemos que la regla de exclusión, conocida como la doctrina del “fruto del árbol ponzoñoso”, no se extiende para suprimir evidencia real obtenida como producto de una violación al privilegio abogado-cliente.
Siendo así, se modifica la opinión emitida por esta Curia a los únicos fines de limitar la exclusión de evidencia a las declaraciones del abogado en violación al privilegio abogado-cliente y no extender la exclusión al arma, cargador y municiones ocupadas.

*185
Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera García emitió una opinión concurrente. La Jueza Asociada Señora Fiol Matta concurrió con el resultado sin opinión escrita.
El Juez Presidente Señor Hernández Denton hace cons-tar la expresión siguiente:
El Juez Presidente Señor Hernández Denton disiente de la opinión mayoritaria, por las mismas razones expuestas en su disenso en Pueblo v. Fernández Rodríguez, 183 DPR 770 (2011).
La Juez Asociada Señora Rodríguez Rodríguez disintió sin opinión escrita.

 Contra esa determinación, el Procurador General compareció el 28 de diciembre de 2011 mediante una solicitud de reconsideración.

 Debido a que la controversia en este caso gira en torno a una violación al privilegio abogado-cliente y no al derecho contra la autoincriminación, únicamente discutimos y resolvimos si procede la supresión de evidencia real obtenida como producto de una violación al privilegio abogado cliente.

 E.L. Chiesa, Derecho procesal penal: etapa investigativa, San Juan, Pubs. JTS, 2006, pág. 127.

 Silverthorne Lumber Co. v. U.S., 251 US 385, 392 (1920).

 6 LaFave, Search and Seizure: A Treatise on the Fourth Amendment Sec. 11.4, pág. 257 (2004).

 3 LaFave, Israel, King and Kerr, Criminal Procedure 3rd Sec. 9.3(a), pág. 419 (2007).

 E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1991, Vol. I, pág. 289.

 íd., pág. 290.

 íd.

 Véanse: Pueblo v. Rosado, 62 DPR 197 (1943); Pueblo v. Decós, 62 DPR 148 (1943); Pueblo v. Capriles, 58 DPR 548 (1941). Véase, además, Toll y Sucn. Rivera Rojas v. Adorno Medina, 130 DPR 352, 357-358 (1992).

 Toll y Sucn. Rivera Rojas v. Adorno Medina, supra, pág. 358.

 Chiesa Aponte, op. cit, pág. 290.

 Art. II, Sec. 10, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 327.

 Véanse: U.S. v. Warshak, 631 F.3d 266 (6to Cir. 2010); U.S. v. Squillacote, 221 F.3d 542 (4to Cir. 2000); Nickel v. Hannigan, 97 F.3d 403 (10mo Cir. 1996); U.S. v. Marashi, 913 F.2d 724 (9no Cir. 1990); U.S. v. White, 879 F.2d 1509 (7mo Cir. 1989).

 Véase esc. 11 en U.S. v. Marashi, supra, pág. 731.

 U.S. v. Warshak, supra, pág. 292.

 íd.

 íd., pág. 294.

 íd.

 Nickel v. Hannigan, supra, pág. 405.

 íd.

 íd., pág. 406.

 Nickel v. Hannigan, supra, pág. 409.

 Véanse: People v. Navarro, 138 Cal. App. 4th 146 (2006); State v. Sandini, 395 So.2d 1178 (1981); Securities and Exchange Commission v. OKC Corp., 474 F. Supp. 1031 (N.D. Tex. 1979).

 State v. Sandini, supra, pág. 1181.

 íd.

 R.P. Mosteller, Admissibility of Fruits of Breached Evidentiary Privileges: The Importance of Adversarial Fairness, Party Culpability, and Fear of Immunity, 81 Wash. U. L.Q. 961, 1010 (2003).

 Id., pág. 963.

 Id., pág. 1006.

 E.L. Chiesa Aponte, op. cit., págs. 290-291.

 Chiesa, Derecho procesal penal: etapa investigativa, op. cit., pág. 112.

 íd.

íd.

 íd., pág. 132.

 Pueblo v. Cedeño Laclaustra, 157 DPR 743 (2002).

 Pueblo v. Calderón Díaz, 156 DPR 549 (2002); Pueblo v. Bonilla Romero, 120 DPR 92 (1987).

 Pueblo v. Serrano, Serra, 148 DPR 173 (1999); Pueblo v. Yip Berríos, 142 DPR 386 (1997).

 Pueblo v. Negrón Martínez [II], 144 DPR 873 (1998); Pueblo v. Negrón Martínez I, 143 DPR 1 (1997).

 Pueblo v. Miranda Alvarado, 143 DPR 356 (1997); Pueblo v. Rodríguez Rivera, 91 DPR 456 (1964).

 Pueblo v. Rey Marrero, 109 DPR 739 (1980).

 Toll y Sucn. Rivera Rojas v. Adorno Medina, supra, pág. 356.

 4 Diario de Sesiones de la Convención Constituyente 2568 (1952). Véase, además, Toll y Sucn. Rivera Rojas v. Adorno Medina, supra, pág. 356.

 Toll y Sucn. Rivera Rojas v. Adorno Medina, supra, pág. 359.

 Véase, además, Chiesa Aponte, op. cit., págs. 284-285.

 Conviene aclarar lo dicho en la opinión que en parte hoy reconsideramos en el sentido de que “si la información divulgada de forma no autorizada incrimina penalmente [...] el abogado [...] viola el derecho a la no autoincriminación de su cliente”. Lo que quisimos decir fue lo señalado por los tratadistas Weinstein y Berger *184 en el sentido de la estrecha relación que existe entre esta falta ética y el derecho a la no autoincriminación del cliente; no que el abogado pueda violar tal derecho constitucional. 3 Weinstein’s Federal Evidence Sec. 503.03 [1] (2011); Notas, The Attorney-Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement, 91 Harv. L.Rev. 464, 480 (1977).